S09G0139. CHASE v. THE STATE.
(681 SE2d 116)

SEARS, Chief Justice.

This appeal presents a straightforward question of law. The question is whether, in November 2006, consent of the alleged victim

was a defense to the crime of sexual assault of a person enrolled in school. We have concluded that it was, as long as the student had reached the legal age of consent. Accordingly, the trial court erred in preventing the defendant from presenting a consent defense at trial, and we reverse the contrary judgment of the Court of Appeals.

1. In November 2006, 28-year-old Melissa Lee Chase was a highly regarded teacher and coach at Harlem High School in Harlem, Georgia. The alleged victim was a 16-year-old junior, Christy Elaine Garcia. Garcia had been in one of Chase's classes the previous year, but by November 2006, she was no longer one of Chase's students. Nevertheless, on occasion, Garcia was subject to Chase's authority, such as when Chase would be assigned to oversee the cafeteria along with several other teachers during lunch period. In addition, Garcia was expected, as a student at the school, to obey Chase's instructions because of Chase's position as a member of the faculty.

Between August and November 2006, Garcia and Chase developed a friendship that eventually turned romantic and, on one occasion, sexual. Garcia's father and stepmother, with whom Garcia lived, had been letting Garcia spend time with Chase outside regular school hours and had even invited Chase to their house for cookouts. On four or five occasions, Garcia was allowed to spend the night at Chase's house. On the last occasion, the relationship between Chase and Garcia became sexual.[1] Soon after, Garcia's mother found notes in Garcia's purse written to Garcia by Chase. Disturbed by their romantic content, Garcia's mother contacted the police, and Chase was arrested and charged with sexual assault of a person enrolled in school.

Chase waived her right to a jury trial. At the one-day bench trial, Garcia testified on cross-examination that she initiated the relationship with Chase because she "had feelings for her" and that she was the one who "pushed" the relationship. The State objected on grounds of relevance, arguing that consent of the alleged victim was no defense to a charge of sexual assault of a person enrolled in school under OCGA § 16-6-5.1 (b). The trial court sustained the State's objections to all further attempts by Chase to present a consent defense. The trial court found Chase guilty as charged and sentenced her to fifteen years in prison, with ten years to serve behind bars and five years on probation. The trial court also sentenced Chase to

---

[1] It is undisputed that on that night, Chase engaged in "sexual contact" with Garcia within the meaning of OCGA § 16-6-5.1 (b). See OCGA § 16-6-5.1 (a) (2), (4) ("As used in this Code section, the term: . . . '[i]ntimate parts' means the genital area, groin, inner thighs, buttocks, or breasts of a person . . . [and] '[s]exual contact' means any contact between the actor and a person not married to the actor involving the intimate parts of either person for the purpose of sexual gratification of the actor.").

register as a sex offender. The trial court denied Chase's motion for new trial, and she filed a timely notice of appeal.

The Court of Appeals affirmed, agreeing with the trial court that consent is not a defense to the crime of sexual assault of a person enrolled in school under OCGA § 16-6-5.1 (b), and holding that the trial court therefore did not err in preventing Chase from presenting her consent defense.[2] We granted Chase's petition for certiorari and directed the parties to address the following question:

> Did the Court of Appeals err in ruling that subsection (c) (3) of OCGA § 16-6-5.1 applies to prosecutions under subsection (b) of the statute?

2. It is elementary that "[i]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly."[3] In so doing, "the ordinary signification shall be applied to all words."[4] Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly.[5] In fact, "[w]here the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden."[6] Moreover, Georgia law provides that the express mention of one thing in an act or statute implies the exclusion of all other things.[7] In our reading of a statute, this Court "is not authorized to disregard *any* of the words [used therein] unless the failure to do so would lead to an absurdity manifestly not intended by the legislature."[8]

In addition, when we are interpreting a statute, we must presume that the General Assembly had full knowledge of the existing state of the law and enacted the statute with reference to it.[9] We construe statutes "in connection and in harmony with the existing law, and as a part of a general and uniform system of jurisprudence," and "their meaning and effect is to be determined in

---

[2] *Chase v. State*, 293 Ga. App. 415 (667 SE2d 195) (2008).

[3] OCGA § 1-3-1 (a).

[4] OCGA § 1-3-1 (b).

[5] *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981) ("[T]he language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent.") (quoting *Caminetti v. United States*, 242 U. S. 470, 490 (37 SC 192, 61 LE 442) (1917)).

[6] *Abdulkadir v. State*, 279 Ga. 122, 123 (610 SE2d 50) (2005); *Six Flags Over Ga. II, L.P. v. Kull*, 276 Ga. 210, 211 (576 SE2d 880) (2003).

[7] *Morton v. Bell*, 264 Ga. 832, 833 (452 SE2d 103) (1995).

[8] *Labovitz v. Hopkinson*, 271 Ga. 330, 336 (519 SE2d 672) (1999) (citations and punctuation omitted; emphasis supplied).

[9] *Retention Alternatives, Ltd. v. Hayward*, 285 Ga. 437 (678 SE2d 877) (2009); *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. 689, 700-701 (10 SE2d 375) (1940).

connection, not only with the common law and the constitution, but also with reference to other statutes and the decisions of the courts."[10]

The age of consent in Georgia is 16.[11] In other words, generally speaking, it is a crime to have physical sexual contact with a person 15 years of age or younger. The converse is also true. Thus, generally speaking, it is not a crime in Georgia to have physical sexual contact with a willing participant who is 16 years of age or older.[12] This is the legal backdrop against which the General Assembly acted when, in early 2006, it repealed the existing version of OCGA § 16-6-5.1 entirely and replaced it with the current version effective July 1, 2006.

The trial court convicted Chase of one count of violating OCGA § 16-6-5.1 (b). As relevant here, subsection (b) reads as follows:

> A probation or parole officer or other custodian or supervisor of another person referred to in this Code section commits sexual assault when he or she engages in sexual contact with another person . . . who is enrolled in a school . . . and such actor has supervisory or disciplinary authority over such other person.

Conviction under the statute carries a sentence of 10-30 years in prison, but if the student is under 14, the sentencing range jumps to 25-50 years.[13] The special sentencing provisions of OCGA § 17-10-6.2 apply.

The plain language of the statute does not in any way indicate that the General Assembly intended to remove consent as a defense to a charge of violating subsection (b). The General Assembly knows full well how to eliminate the consent defense when it wishes to do so. Indeed, the General Assembly eliminated consent as a defense to three crimes in the very next subsection of OCGA § 16-6-5.1.

---

[10] *Botts v. Southeastern Pipe-Line Co.*, 190 Ga. at 701.

[11] *Phagan v. State*, 268 Ga. 272, 273-274 (486 SE2d 876) (1997); *Drake v. State*, 239 Ga. 232, 233 (236 SE2d 748) (1977).

[12] This does not mean, of course, that the General Assembly has concluded that it is wise or moral or healthy for 16-year-olds to engage in sexual activity or for others to engage in sexual activity with them. It is simply the line the General Assembly has drawn to distinguish between sexual behavior that is so destructive to individuals and society at large that use of the hammer of the criminal law is appropriate and sexual activity that, while perhaps detrimental to the individual and society to some degree, nevertheless should not be subject to criminal sanctions. Georgia law is in accord with the majority of United States jurisdictions in this respect. Kate Sutherland, *From Jailbird to Jailbait: Age of Consent Laws and the Construction of Teenage Sexualities*, 9 Wm. & Mary Journal of Women & Law 313, 314 (2003).

[13] OCGA § 16-6-5.1 (b).

Subsection (c) (1) (A)-(B) makes it a crime for a person with supervisory or disciplinary authority over another person to engage in sexual contact with the other person when the other person is "[i]n the custody of law" or "[d]etained in or is a patient in a hospital or other institution." Subsection (c) (2) makes it a crime for an actual or purported practitioner of psychotherapy to engage in sexual contact with another person he or she "knew or should have known is the subject of the actor's actual or purported treatment or counseling, or, if the treatment or counseling relationship was used to facilitate sexual contact between the actor and said person." Then, in subsection (c) (3), the statute provides that "[c]onsent of the victim shall not be a defense to a prosecution under this subsection."

The trial court reasoned, and the Court of Appeals agreed, that subsection (c) (3)'s provision eliminating consent of the victim as "a defense to a prosecution under this subsection" removed the consent defense for prosecutions brought under subsection (b) as well. We think not. This "construction" of the statute is not so much judicial interpretation as it is judicial sleight of hand.

The words "[c]onsent of the victim shall not be a defense to a prosecution" in subsection (c) (3) are followed directly by the phrase "under *this* subsection." (Emphasis supplied.) Those three words can mean only one thing: the General Assembly intended to eliminate consent as a defense to the crimes created by subsection (c) only. Thus, subsection (c) (3) did not, as the trial court and Court of Appeals reasoned, remove consent of the alleged victim as a viable defense to a charge of sexual assault of a person enrolled in school, because that crime was created by subsection (b) of the statute, not subsection (c).

The District Attorney defends the trial court and Court of Appeals' interpretive legerdemain on public policy grounds. The District Attorney concedes that a "literal reading" of the statute might allow for a consent defense and acknowledges that "criminal statutes should be strictly construed against the State and in favor of an accused." Nonetheless, the District Attorney points to the State's compelling interest in protecting children and the vulnerable status of students involved in secondary education programs and below and argues that "no court, either trial or appellate, should recognize any kind of 'consent' defense to the criminal conduct proscribed by OCGA § 16-6-5.1 (b)." The District Attorney urges us to look past the plain language of the statute and the canons of statutory construction applicable to criminal laws because "[m]anifestly, the State must have an absolute 'zero tolerance' policy towards sexual liaisons between educators and students, regardless [o]f whether such relationships are of a heterosexual or a homosexual nature." In

the District Attorney's view, enforcing the statute as written by the General Assembly would result in "absurdity or injustice or would lead to contradictions."

The District Attorney's passion for protecting school-age children is admirable. However, to accept these arguments would be to legislate by judicial fiat, and to do so ex post facto to boot. We will not usurp the General Assembly's legislative role by engrafting onto subsection (b) of OCGA § 16-6-5.1 language the General Assembly placed in subsection (c) and specifically limited to that subsection only.

The District Attorney's argument that we must eliminate the consent defense to sexual assault of a child enrolled in school to avoid absurdity, injustice, or contradictory results founders on the reality that doing so would produce results at least as absurd, unjust, and contradictory, if not more so. If consent is no defense to a charge of sexual assault of a person enrolled in school, then the age of the teacher and the student have no effect on whether a crime has been committed. Consequently, a 30-year-old law school professor who engaged in a fully consensual sexual encounter with a 50-year-old law school student embarking on a second career would be guilty of a felony and subject to punishment of 10-30 years in prison. That result — not the situation in this case — would be truly absurd and unjust. But that is precisely what the statute would mean were we to accept the reading adopted by the trial court and the Court of Appeals.

Our refusal to write into OCGA § 16-6-5.1 (b) a provision removing consent as a defense does not render the 2006 amendment nugatory. It is true that, under our reading of the statute, both before and after the enactment of the 2006 revision to OCGA § 16-6-5.1, Chase's conduct with Garcia was not a crime because Garcia was over the age of consent when the sexual contact occurred. However, had Garcia been 15 years old rather than 16 years old, the change in the law would have made a significant difference. Prior to July 1, 2006, if Garcia had been 15 years old, Chase could have been convicted only of the crime of oral sex in violation of OCGA § 16-6-2 (a) (1), which carries a possible sentence of 1-20 years in prison. However, after July 1, 2006, if Garcia had been 15 years old, Chase, as a teacher, could have been convicted of sexual assault against a person enrolled in school in violation of OCGA § 16-6-5.1 (b), which carries a possible sentence of 10-30 years in prison. An increase in sentencing range from 1-20 years in prison to 10-30 years in prison is a significantly greater deterrent to teacher sexual contact with students 15 years of age or younger.

It is no response to the unreasonable results the trial court and Court of Appeals' construction of the statute would produce to say

that prosecutors could exercise their discretion to avoid them. That tells us nothing about what the General Assembly intended when it enacted the statute. The best indicator of the General Assembly's intent is the statutory text it actually adopted. As the District Attorney concedes, the plain language of the statute does not eliminate consent as a defense to prosecutions under subsection (b). We agree with the United States Supreme Court's recent pronouncement, made in a unanimous decision, that "prosecutorial discretion is not a reason for courts to give improbable breadth to criminal statutes."[14]

*Judgment reversed. All the Justices concur, except Carley and Thompson, JJ., who dissent.*

CARLEY, Justice, dissenting.

The majority remarkably misinterprets OCGA § 16-6-5.1 (b) as implicitly making consent a defense and simultaneously incorporating an unmentioned age of consent in an apparent attempt to make its holding more palatable. The majority achieves this result only by extending the reach of subsection (c) (3) beyond the very language on which it relies, erroneously construing subsections (b) and (c) in pari materia with each other, and completely disregarding other portions of Chapter 6 of Title 16 and the legislative development of OCGA § 16-6-5.1. I also note that the majority appears to contradict its holding and make consent a conclusive presumption rather than a defense if the victim is over the age of consent, when it states that "Chase's conduct with Garcia was not a crime because Garcia was over the age of consent when the sexual contact occurred." (Majority Opinion, p. 698) Thus, today's ruling will result in there being no viable prosecutions of violations of OCGA § 16-6-5.1 (b) if the victim is 16 years of age or older.

Subsection (c) (3) provides only that "[c]onsent of the victim shall not be a defense to a prosecution under this subsection." It does not indicate that the irrelevance of consent is limited to "this subsection." Nor does subsection (c) (3) in any manner imply that consent is a defense to a prosecution under subsection (b). Instead, subsection (c) (3) simply excludes consent as a defense to the crimes defined in subsection (c).

Subsection (c) was first added to OCGA § 16-6-5.1 in order "to provide for the offense of sexual assault against persons under psychotherapeutic care . . . ." Ga. L. 1992, p. 1940. Subsection (c) (2) addresses the "actual or purported practitioner of psychotherapy." Since such a practitioner does not necessarily have "supervisory or

---

[14] *Abuelhawa v. United States*, ___ U. S. ___, ___, n. 3 (129 SC 2102, 173 LE2d 982) (2009).

disciplinary authority" over the patient, the inclusion of subsection (c) (1) makes it clear that someone who has such authority, because the patient is either imprisoned or institutionalized, is also subject to prosecution under subsection (c). However, subsection (c) (1) does not require that the victim be under psychotherapeutic care, and instead sets forth elements which are all among the alternative elements listed in subsection (b). In other words, conduct meeting all of the elements in subsection (c) (1) can also be prosecuted under subsection (b). Thus, the majority's holding leads to the anomalous result that consent becomes a defense to the crime defined in subsection (c) (1) if it is prosecuted under subsection (b). Availability of consent as a defense to that single crime will now depend solely upon which subsection is charged. Undoubtedly, the State will always prosecute under subsection (c) (1), and the corresponding portion of subsection (b) will become useless.

The majority argues that subsection (c) (3) shows that the General Assembly knows "full well how to eliminate the consent defense when it wishes to do so." (Majority Opinion, p. 696) Rarely, however, has the legislature explicitly eliminated the defense of consent. Ordinarily, the General Assembly expressly addresses consent only when it has the opposite intent. Thus, in many sections of Chapter 6, the language explicitly makes lack of consent *an element* of the crime. OCGA §§ 16-6-1 (a) (1) (rape "against her will"), 16-6-2 (a) (2) (aggravated sodomy), 16-6-22.1 (sexual battery), 16-6-22.2 (aggravated sexual battery). See also *State v. Collins*, 270 Ga. 42, 43 (508 SE2d 390) (1998) ("against her will" in rape statute means without consent); *Sharma v. State*, 294 Ga. App. 783, 785 (670 SE2d 494) (2008) (sexual battery statute makes lack of consent an essential element of the crime). Conversely, in most other sections in that chapter, consent or non-consent is irrelevant and, thus, is not set forth as either an element or defense. OCGA §§ 16-6-1 (a) (2) (rape of a female "less than ten years of age"), 16-6-2 (a) (1) (sodomy), 16-6-3 (statutory rape), 16-6-4 (child molestation), 16-6-5 (enticing a child), 16-6-22 (incest). See also *Powell v. State*, 270 Ga. 327 (510 SE2d 18) (1998) (consent not relevant under sodomy statute, but constitutionally relevant); *Coker v. State*, 164 Ga. App. 493, 494 (1) (297 SE2d 68) (1982) (consent irrelevant in cases of statutory rape, child molestation, and enticing a child). Subsection (b) of OCGA § 16-6-5.1 not only omits any mention of consent or lack thereof, it sets forth the element of "supervisory or disciplinary authority" in the actor. That element, like the victim's age in other statutes, reflects the increased danger of exploitation such that consent is not a reasonable defense. However, the element of "supervisory or disciplinary authority" is not included in subsection (c) (2). Thus, it is not as readily apparent in that subsection as it is

in subsection (b) that consent is not a defense, and the legislature's inclusion of subsection (c) (3) constitutes a helpful clarification with respect to subsection (c) which is not necessary for subsection (b).

The majority states that its "refusal to write into OCGA § 16-6-5.1 (b) a provision removing consent as a defense does not render the 2006 amendment nugatory." (Majority Opinion, p. 698) As discussed above, the majority actually writes consent as a defense into subsection (b). The majority may be correct that its holding does not render that subsection nugatory, since the punishment thereunder was substantially increased in 2006. However, under the majority's rewriting of subsection (b), it is reduced to a mere enhanced penalty statute. Moreover, not even this limited effect of subsection (b) would have resulted from such a judicial rewriting prior to 2006. If the majority correctly construes that subsection as including consent as a defense, then every prior version thereof was largely ineffective. Violations of all prior versions could be punished only by imprisonment of one to three years. Therefore, if the majority's interpretation of subsection (b) is correct, most instances of non-consensual sexual contact prohibited therein could and would have been prosecuted under other sections of Chapter 6 which provide for more severe punishment. In other words, every version of subsection (b) has been essentially useless under the majority's construction thereof.

Although the majority accurately quotes many rules of statutory construction, it fails to apply them correctly, and the result is disturbing. A statute enacted in pertinent part to protect students from exploitation by teachers is now almost useless due to the judicial imposition of a defense of consent, even though consent in these circumstances is commonly obtained by the very exploitation which the statute was designed to prevent. That result is not made any less disturbing by the majority's hypothetical application of the statute to a consensual sexual encounter between a 30-year-old law professor and a 50-year-old student. Even that age difference does not eliminate a student's vulnerability to exploitation by a person having supervisory or disciplinary authority over such student. In any event, a single hypothetical cannot control the construction of OCGA § 16-6-5.1. Because the majority clearly errs in its interpretation of that statute, I respectfully dissent to the reversal of the Court of Appeals' judgment.

I am authorized to state that Justice Thompson joins in this dissent.

DECIDED JUNE 15, 2009 —
RECONSIDERATION DENIED JUNE 30, 2009.

702

*Victor Hawk*, for appellant.

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.