**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 2, 2016**

# In the Court of Appeals of Georgia

A15A1788. WRIGHT v. BROWN et al.

DILLARD, Judge.

Willie Wright, Jr., an inmate in the Macon State Prison acting *pro se*, filed suit in the Superior Court of Wilcox County against State prison officials, alleging claims under State tort law and 42 USC § 1983, and requesting to proceed *in forma pauperis* ("IFP") so as to waive filing fees. The defendants filed a traverse to Wright's IFP request, arguing that his numerous previously dismissed federal lawsuits counted as strikes under the Georgia Prison Litigation Reform Act ("PLRA")[1] and, thus, barred him from proceeding IFP in this matter. The trial court agreed and dismissed the case without prejudice. On appeal, Wright contends, *inter alia*, that the court erred in ruling that his previously dismissed federal lawsuits count as strikes under the

---

[1] *See* OCGA § 42-12-1 *et seq*.

Georgia PLRA. We agree and, therefore, reverse the court's ruling and remand the case for further proceedings consistent with this opinion.

The undisputed record shows that since 2010, Wright has been an inmate incarcerated in the Macon State Prison and is serving a 20-year sentence. Over the course of the last five years, Wright filed seven lawsuits in the United States District Court for the Middle District of Georgia against various prison officials, all of which were dismissed. In the sixth such lawsuit,[2] Wright sued 14 State officials, alleging, *inter alia*, that he suffered injuries when Antonio Brown, a prison guard, stomped on his hand, and that prison staff failed to provide adequate medical treatment for that injury. Nevertheless, on January 27, 2014, the district court dismissed Wright's suit without prejudice on the ground that it was barred by the "three strikes rule" of the federal Prison Litigation Reform Act.[3]

---

[2] *See Wright v. Brown*, Case No. 5:13-CV-386 (M.D. Ga. 2014).

[3] *See* 28 USC § 1915 (g) ("In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.").

Consequently, on December 31, 2014, Wright filed the subject lawsuit in the Superior Court of Wilcox County against Brown and at least one other prison official ("defendants"), alleging claims under State tort law and 42 USC § 1983. And rather than pay the filing fee, Wright filed a request to proceed IFP. Shortly thereafter, the defendants filed a special appearance and traverse to Wright's IFP request. Specifically, the defendants argued that Wright's seven previously dismissed federal lawsuits qualified as strikes under OCGA § 42-12-7.2 of the Georgia PLRA and, thus, the statute barred him from proceeding IFP. The trial court agreed and, therefore, dismissed Wright's lawsuit without prejudice. This appeal follows.

1. We first note that in his appellate brief, in addition to challenging the trial court's construction of the three-strikes provision in the Georgia PLRA,[4] Wright contends that the court erred in (1) failing to find that the statute was unconstitutional, vague, and overbroad; (2) finding that the trial court and the federal district court are the same sovereign; and (3) finding that filing in the federal district court imposes a cost on the State. These alleged errors, however, have been waived on appeal. Wright, in contravention of this Court's rules, has "not shown how [these enumerations] of error [were] preserved for our review, nor has [he] provided any relevant citation to

---

[4] OCGA § 42-12-1 *et seq.*

3

the record showing that [these claims] of error [were] raised below."[5] In fact, nothing in the appellate record indicates that these particular arguments *were* raised below. And we will not consider an issue raised for the first time on appeal, "because the trial court has not had the opportunity to consider it."[6]

2. In three enumerations of error, Wright essentially contends that the trial court erred in ruling that his federal lawsuits in the United States District Court for the Middle District of Georgia qualify as strikes under OCGA § 42-12-7.2 of the Georgia PLRA. We agree and, therefore, reverse the court's ruling.

At the outset, we note that in interpreting any statute, we necessarily begin our analysis with familiar and binding canons of statutory construction. And in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[7] Thus, we must

---

[5] *White Oak Homes, Inc. v. Cmty. Bank & Trust*, 314 Ga. App. 502, 504 (2) (724 SE2d 810) (2012); *see also* Court of Appeals Rule 25 (a) (1).

[6] *White Oak Homes, Inc.*, 314 Ga. App. at 504 (2) (punctuation omitted); *see also Sitton v. Print Direction, Inc.*, 312 Ga. App. 365, 370 (3) (718 SE2d 532) (2011).

[7] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation omitted); *see also Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013) (same).

afford the statutory text its plain and ordinary meaning,[8] consider the text contextually,[9] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[10] and seek to "avoid a construction that makes some language mere surplusage."[11] Importantly, when the language of a statute is plain and susceptible of only one natural and reasonable construction, "courts must construe the statute accordingly."[12]

---

[8] *See Deal*, 294 Ga. at 172 (1) (a) ("To that end, we must afford the statutory text its plain and ordinary meaning." (punctuation omitted); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies) . . . .").

[9] *See Arizona v. Inter Tribal Council of Az., Inc.*, ___ U.S. ___, ___ (II) (B) (133 SCt 2247 186 LE2d 239) (2013) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words . . . ."); *Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012) (same).

[10] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Martinez*, 325 Ga. App. at 273.

[11] *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (punctuation omitted); *accord Holcomb v. Long*, 329 Ga. App. 515, 518 (1) (765 SE2d 687) (2014).

[12] *Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013) (punctuation omitted); *accord Chase v. State*, 285 Ga. 693, 695-96 (2) (681 SE2d 116) (2009); *Martinez*, 325 Ga. App. at 273 (2).

Bearing these guiding principles in mind, we will now consider the relevant text of OCGA § 42-12-7.2, the "three strikes" provision of Georgia's PLRA, which provides that

> [i]n no event shall a prisoner file any action in forma pauperis in any court of this state if the prisoner has, on three or more prior occasions while he or she was incarcerated or detained in any facility, filed any action in any court of this state that was subsequently dismissed on the grounds that such action was frivolous or malicious, unless the prisoner is under imminent danger of serious physical injury.

On appeal, Wright argues that the trial court erred in construing the phrase "any action in any court of this state" to include the lawsuits he filed in federal district court. We agree.

Turning first to the plain text of the statute, we note that, while the federal district court where Wright filed his previous lawsuits is certainly *in* or *within* this State, the word *of*—the term the statute actually uses—indicates "the thing, place, or direction whence anything goes, *comes*, or is driven or moved . . . ."[13] And indeed,

---

[13] THE COMPACT OXFORD ENGLISH DICTIONARY 1201 (2d ed. 1991) (emphasis supplied); *see also* WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 1689 (2d ed. 1957) (defining "of" as "proceeding from, belonging to; relating to . . . .").

although the appellate courts of this State have yet to address the specific language at issue in OCGA § 42-12-7.2, in construing an early version of the renewal statute,[14] the Supreme Court of Georgia held that the nearly identical phrase, "courts of this state," did not apply to federal courts but, rather, limited it to mean "courts created by the constitution and laws of this state."[15] Approximately 90 years later, this Court, within the context of the garnishment statute,[16] similarly interpreted the phrase "a court of this State" to include only courts "created by the constitution and laws of Georgia."[17] We then went on to note that federal courts, obviously, are not created by the constitution or laws of this State.[18]

Arguing that the overarching purpose of the Georgia PLRA, as expressly stated in § 42-12-2, is to "address the rising costs of litigation caused by the filing of

---

[14] *See* Code 1873, § 2932.

[15] *Constitution Publ'g Co. v. DeLaughter*, 95 Ga. 17, 18 (21 SE 1000) (1894).

[16] *See* former Code Ann. § 46-101.

[17] *Hubert v. City of Ackworth*, 154 Ga. App. 101, 102 (267 SE2d 823) (1980) (punctuation omitted).

[18] *See id.*

7

meritless and frivolous lawsuits by prisoners,"[19] the defendants contend that construing the phrase "any action in any court of this state" to include lawsuits filed in federal court fully effectuates the General Assembly's *intent* in enacting OCGA § 42-12-7.2. We find this argument unavailing.

As previously noted, the plain meaning of OCGA § 42-12-7.2 makes clear that "any action in any court of this state" cannot be reasonably interpreted as including an action filed in a federal court. Furthermore, the contextual backdrop of this statutory provision only serves to bolster this conclusion. Context is, of course, "a primary determinant of meaning."[20] And for context, we may look to "other provisions of the same statute, the structure and history of the whole statute, and the other law—constitutional, statutory, and common law alike—that forms the legal background of the statutory provision in question."[21] We must also presume that the

---

[19] *In the Interest of K. W.*, 233 Ga. App. 140, 140 (1) (503 SE2d 394) (1998) (punctuation omitted) (physical precedent only); *see* OCGA § 42-12-2.

[20] *May v. State*, 295 Ga. 388, 391 (761 SE2d 38) (2014).

[21] *Id.* at 391-92; *see also Chase v. State*, 285 Ga. 693, 695-96 (2) (681 SE2d 116) (2009) (punctuation omitted).

8

General Assembly had "full knowledge of the existing state of the law and enacted the statute with reference to it."[22]

Here, in light of the fact that well before the General Assembly enacted OCGA § 42-12-7.2[23] the appellate courts of this State have, in at least two separate contexts, construed the phrase "courts of this state" as not including federal courts, we are not persuaded by the argument that our legislature, employing the nearly identical phrase, nonetheless intended for federal courts to be included in this context and actions filed in such courts to count as strikes under § 42-12-7.2.[24] Had the General Assembly intended to attribute a broader meaning to the phrase "courts of this state," so as to include federal courts, it could have done so.[25] Indeed, even a cursory review of the Georgia Code yields several examples of the General Assembly expressly distinguishing between state and federal courts and explicitly stating when legislation

---

[22] *Chase*, 285 Ga. at 695 (2); *accord Luangkhot*, 292 Ga. at 424 (1).

[23] *See* Ga. L. 1996, p. 400, § 1.

[24] *See Summerlin v. Ga. Pines Cmty. Serv. Bd.*, 286 Ga. 593, 595 (2) (690 SE2d 401) (2010) (concluding that because the General Assembly is presumed to enact statutes with full knowledge of existing law, it expected courts to apply the legal definition of a certain term as developed under the common law and existing jurisprudence).

[25] *See id.*

will implicate or be implicated by actions in the latter.[26] And while the defendants may have perfectly sound policy arguments in favor of why frivolous filings in federal courts such as Wright's *should* constitute strikes under Georgia's PLRA, "it is emphatically the province and duty of the judiciary to say what the law is, not what judges or parties believe it should be."[27]

---

[26] *See* OCGA § 9-2-61 (a) ("When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in *a court of this state or in a federal court* either within the original applicable period of limitations or within six months after the discontinuance or dismissal . . . ."); OCGA § 9-12-81 (b) ("As against the interest of third parties acting in good faith and without notice who have acquired a transfer or lien binding the property of the defendant in judgment, no money judgment obtained within the county of the defendant's residence in *any court of this state or federal court* in this state shall create a lien upon the property of the defendant unless the execution issuing thereon is entered upon the execution docket. . . ."); OCGA § 34-8-122 (b) ("Any finding of fact or law, judgment, determination, conclusion, or final order made by an adjudicator, examiner, hearing officer, board of review, or any other person acting under the authority of the Commissioner with respect to this chapter shall not be admissible, binding, or conclusive in any separate or subsequent action or proceeding between a person and such person's present or previous employer brought before *any court of this state or the United States . . . .*").

[27] *AA-Professional Bail Bonding v. Deal*, 332 Ga. App. 857, 861 (775 SE2d 217) (2015) (physical precedent only); *see also Finney v. Dep't of Corr.*, 263 Ga. 301, 302-03 (1) (434 SE2d 45) (1993) (noting that the purpose of the judiciary is not to say what the law ought to provide, and that its authority extends only to interpreting the law as it was enacted by the legislature).

Given the foregoing, the trial court erred in ruling that Wright's lawsuits in federal district court qualify as strikes under OCGA § 42-12-7.2 and in thereby dismissing his request to proceed IFP and his lawsuit on this ground. Accordingly, we reverse the trial court's ruling and remand this case for further proceedings consistent with this opinion.

3. Wright also argues that the trial court erred in granting defendants' traverse despite the fact that defendants never contested his affidavit of indigence.[28] But as discussed *supra*, the court's dismissal of Wright's lawsuit was grounded exclusively in the erroneous premise that Wright's federal lawsuits counted as strikes under Georgia's PLRA, and nothing in the record indicates that the court even considered the veracity of Wright's pauper's affidavit. Thus, this contention lacks merit.

4. In light of our holding in Division 2, *supra,* Wright's remaining enumeration of error is moot.

*Judgment reversed and case remanded with direction. Ellington, P. J., concurs. McFadden, J., concurs fully and specially.*

---

[28] *See* OCGA § 9-15-2 (a) (2) ("Any other party at interest or his agent or attorney may contest the truth of an affidavit of indigence by verifying affirmatively under oath that the same is untrue. The issue thereby formed shall be heard and determined by the court, under the rules of the court. . . .").

11

A15A1788. WRIGHT v. BROWN et al.

McFADDEN, Judge, concurring fully and specially.

I concur fully. I agree that, for the reasons well and thoughtfully explained by the majority, we cannot adopt the Attorney General's arguments about the intention of the General Assembly regarding the statute before us today. I write separately to emphasize, however, that Georgia courts are bound by statute and precedent to give due consideration to the intention of the General Assembly.

OCGA § 1-3-1 (a) directs, "In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy. Grammatical errors shall not vitiate a law. A

transposition of words and clauses may be resorted to when a sentence or clause is without meaning as it stands." Similarly OCGA § 13-2-3 directs that in the interpretation of contracts, "The cardinal rule of construction is to ascertain the intention of the parties. If that intention is clear and it contravenes no rule of law and sufficient words are used to arrive at the intention, it shall be enforced irrespective of all technical or arbitrary rules of construction."

Those provisions are deeply imbedded in our law. A Westlaw search indicates that each statute – or the principle set out in it – has been cited hundreds of times by this court and by our Supreme Court. Very often the authority cited for the principles set out in those statutes is case law rather than the statutes. *See, e.g.*, *Cox v. Fowler*, 279 Ga. 501, 502 (614 SE2d 59) (2005) (citing *Carringer v. Rodgers*, 276 Ga. 359, 363 (578 SE2d 841) (2003) for the proposition that "the cardinal rule in construing a legislative act, is 'to ascertain the legislative intent and purpose in enacting the law, and then to give it that construction which will effectuate the legislative intent and purpose'"); *TermNet Merch. Servs. v. Phillips*, 277 Ga. 342, 344 (588 SE2d 745) (2003) (citing *General Electric Credit Corp. v. Brooks*, 242 Ga. 109, 112 (249 SE2d 596) (1978) for the proposition that "when construing statutory phrases, of course, we look diligently for the General Assembly's intention, bearing in mind relevant old

2

laws, evils sought to be addressed and remedies interposed"); *Holcim (US) v. AMDG,* 265 Ga. App 818, 820 (596 SE2d 197) (2004) (citing *Nguyen v. Talisman Roswell, L.L.C.*, 262 Ga. App 480, 482 (585 SE2d 911) (2003) for the proposition that "the cardinal rule of contract construction is to ascertain the intention of the parties"); *Seaboard C. L. R. Co. v. Blackmon*, 129 Ga. App. 342, 344 (199 SE2d 581) (1973) (citing *Barrett & Carswell v. Pulliam*, 77 Ga. 552 (1866), and *Jenkins v. State*, 93 Ga. App. 360 (92 SE2d 43) (1956), for the proposition that in interpreting legislative acts, "the courts shall look diligently for the intention of the General Assembly keeping in view at all times the old law, the evil and the remedy").

Both of those statutes were in the first Georgia Code. Current OCGA § 1-3-1 (a) was § 5 of the Code of 1863. Current OCGA § 13-2-3 was § 2719 of that Code.

And the principle set out in OCGA § 1-3-1 (a) predates the Code of 1863. A few years after that Code was adopted our Supreme Court wrote, "The Code directs that statutes be construed with reference to the intention of the legislature, and that the old law, the mischief and the remedy, be considered to arrive at that intention (Code, §4, par. 9); and such was the rule long before there was any code of laws compiled for this state." *Everett v. Planters' Bank*, 61 Ga. 38, 41 (1878). See also *Forman v. Troup*, 30 Ga. 496, 498 (1860) ("[O]ur Act of 1854 seems to me

3

conclusive. Look at [the statute in question] by the old rule of construction - the old Law - the mischief, and the remedy.").

Indeed the line of Georgia authority for that principle reaches back to Blackstone's Commentaries on the Laws of England. See *Booth v. Williams*, 2 Ga. 252, 254 (1847) ("One of the fundamental common law rules for the construction of remedial statutes is, to consider the old law, the mischief, and the remedy; and it is the business of the Judges so to construe the statute, as to suppress the mischief and advance the remedy. 1 *Black. Com.* 87."). See also *Persons v. Hight*, 4 Ga. 474, 501 (1848) (Warner, J., dissenting) ("'There are three points,' says Blackstone, 'to be considered in the construction of all remedial statutes; the old law, the mischief, and the remedy; that is, how the old law stood at the making the act; what the mischief was for which the Common Law did not provide; and what remedy the Legislature hath provided to cure this mischief. And it is the business of the Judge so to construe the act as to suppress the mischief and advance the remedy.' 1 Bl. Com. 87.").

Accordingly our Supreme Court has adopted Justice Oliver Wendell Holmes's poetic observation that, "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." *Towne v. Eisner*, 245 U.S. 418, 425,

4

(38 SCt 158, 62 LE 372) (1918), quoted in *Everitt v. LaSpeyre*, 195 Ga. 377, 379 (24 SE2d 381) (1943) and in *Robbins v. Vanbrackle*, 267 Ga. 871, 872 (485 SE2d 468) (1997) (Carley, J., dissenting).

Implicit in that observation is recognition that an idea and the words used to express it are intertwined but distinct. It follows that the words used to express an idea sometimes, and perhaps always, do so imperfectly.

But in recognizing such imperfections of expression, judges must take care not to confuse their own policy preferences for the policy choices of the legislature. And a judge's recognition of the policy a statute was intended to advance does not authorize the judge to advance that policy further than did the legislature – particularly where, as here, the advance of one policy is at the expense of others.