**SECOND DIVISION**
**MERCIER, C J.,**
**MILLER, P.J., and HODGES, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**October 12, 2023**

# In the Court of Appeals of Georgia

A23A0888. THE STATE v. CRUMPTON.

HODGES, Judge.

The State of Georgia appeals from the trial court's order granting Corinna Carmen Crumpton's general demurrer to Count 2 of an indictment charging her with the offense of improper sexual contact pursuant to OCGA § 16-6-5.1.[1] The State argues that the trial court erred in finding that the statute criminalizes only in-person acts and thus does not criminalize the electronic transmission of a lewd photograph of Crumpton's genitals to a minor over the age of 16. For the reasons that follow, we reverse.

---

[1] Crumpton was also indicted for electronically furnishing obscene materials to minors (OCGA § 16-12-100.1 (b)). She raises no enumerations of error related to this count.

"This Court reviews a trial court's ruling on a general demurrer de novo in order to determine whether the allegations in the indictment are legally sufficient." (Citation and punctuation omitted.) *Budhani v. State*, 306 Ga. 315, 319 (1) (a) (830 SE2d 195) (2019).

> A general demurrer challenges the *validity* of an indictment by asserting that the *substance* of the indictment is legally insufficient to charge any crime. In other words, a general demurrer is essentially a claim that the indictment is fatally defective and, therefore, void, because it fails to allege facts that constitute the charged crime or *any other* crime[.]

(Citation, punctuation, footnote omitted; emphasis in original.) *State v. Wilson*, 318 Ga. App. 88, 91-92 (1) (732 SE2d 330) (2012); accord *Kimbrough v. State*, 300 Ga. 878, 880 (2) (799 SE2d 229) (2017).

> [A] valid indictment uses the language of the statute, including the essential elements of the offense, and is sufficiently definite to advise the accused of what [s]he must be prepared to confront. To that end, the most helpful way to assess whether an indictment withstands a general demurrer is to ask if the accused could admit each and every fact alleged in the indictment and still be innocent of any crime. If so, the indictment is subject to a general demurrer. If, however, the admission of the facts alleged would lead necessarily to the conclusion that the accused is guilty of a crime, the indictment is sufficient to withstand a general demurrer.

2

(Citations and punctuation omitted.) *Budhani*, 306 Ga. at 319 (1) (a).

The pertinent count of the indictment alleged that on or about August 1, 2021, Crumpton,

> while employed as a teacher with the Hart County High School, did knowingly engage in sexually explicit conduct, specifically that said accused did electronically transmit a photograph depicting the accused engaging in a lewd exhibition of the genitals, through Instagram to and with [A. W.], another person whom the accused knew was contemporaneously enrolled as a student at said school, contrary to the laws of said State, the good order, peace and dignity thereof.

The indictment charged Crumpton "with the offense of IMPROPER SEXUAL CONTACT BY AN EMPLOYEE IN THE FIRST DEGREE (OCGA § 16-6-5.1 (b.2))." An earlier version of the statute was in force when Crumpton was charged, but the statute has since been amended.[2] The then-effective version of OCGA § 16-6-5.1 (b.2) (2021) provided that "[a] person commits the offense of improper sexual contact by a person in a *position of trust* in the first degree when a person in a position of trust engages in sexually explicit conduct with a minor for whom he or she has *entered into*

---

[2] Ga. L. 2021, p. 384, § 6 and Ga. L. 2021, p. 516, § 1 (effective July 1, 2021 - May 1, 2022).

3

*an agreement entrusting him or her with the responsibility of education and supervision* of such minor." (Emphasis supplied.)

The charging language of the indictment, however, actually tracks the language of a different Code section, OCGA § 16-6-5.1 (b) (1) (2021), which provides:

> *An employee* . . . commits the offense of improper sexual contact by [an] employee . . . in the first degree when such employee . . . knowingly engages in sexually explicit conduct with another person whom such employee . . . knows or reasonably should have known is contemporaneously: [] Enrolled as a student at a school of which he or she is an employee or agent[.]

(Emphasis supplied.)

1. The trial court's order examined both OCGA § 16-6-5.1 (b.2) (sexually explicit conduct by a person in a position of trust), the numeric segment of the statute cited in the indictment, as well as OCGA § 16-6-5.1 (b) (1) (sexually explicit conduct by an employee), which contains the statutory language used in the indictment. The trial court determined that both portions of the statute criminalized only in-person acts.

We have held that "[i]t is the description of the crime, rather than the description and number of the section under which it appears in the Code which

4

furnishes the criterion for determining whether the indictment is good." (Citation and punctuation omitted.) *Hill v. State*, 257 Ga. App. 82, 84 (1) (570 SE2d 395) (2002); accord *Morris v. State*, 310 Ga. App. 126, 131 (3) (712 SE2d 130) (2011) ("It is immaterial what the offense is called in the indictment as long as the averments of the presentment are such as to describe an offense against the laws of the State.") (citation and punctuation omitted).

On its face, the indictment fails to charge the essential elements of OCGA § 16-6-5.1 (b.2). *Budhani*, 306 Ga. at 319 (1) (a). It does not allege that Crumpton was a person "in a position of trust," which OCGA § 16-6-5.1 (a) (5.1) defines as "an individual with whom a parent, guardian, or other person acting in loco parentis of a minor has entered into an agreement entrusting such individual with the responsibility of education and supervision of such minor[.]" Nor does the indictment allege that Crumpton had "entered into an agreement" entrusting her with A. W.'s supervision or education, as required by OCGA § 16-6-5.1 (a) (5.1), (b.2). We thus need not reach the issue of whether OCGA § 16-6-5.1 (b.2) criminalizes only in-person acts.

2. We turn now to whether the indictment alleges the essential elements of some other crime. See *Wilson*, 318 Ga. App. at 91-92 (1). As noted above, the indictment uses the language of OCGA § 16-6-5.1 (b) (1). In its order, the trial court

5

found that OCGA § 16-6-5.1 (b) (1) "did not . . . criminalize the electronic distribution of nude photographs to a minor . . . [because the] plain meaning of the statute only includes in-person sexual acts." The State argues that the trial court erred in its reading of the statute, and we agree.

Because the State's arguments on appeal involve the meaning of the statute, we begin our analysis with the basic principles of statutory construction.

> [W]e must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. Further, when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly.

(Citations and punctuation omitted.) *Mays v. State*, 345 Ga. App. 562, 564 (814 SE2d 418) (2018). In all interpretations of statutes, we must "look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). Further, "we presume that the General Assembly meant what it said and said what it meant." (Citation omitted.) *Mitchell v. State*, 343 Ga. App. 116, 117 (806 SE2d 226) (2017). "[W]hat is paramount is that a penal

6

statute must always be interpreted strictly against the State and in favor of human liberty." *Glover v. State*, 272 Ga. 639, 641(533 SE2d 374) (2000).

OCGA § 16-6-5.1 (b) (1), in pertinent part, provides that an employee "commits the *offense of improper sexual contact* . . . when such employee . . . knowingly *engages in sexually explicit conduct* with another person" whom she knows or reasonably should have known is a student at the school where she is employed. (Emphasis supplied.)

OCGA § 16-6-5.1 (a) provides some definitions for this Code section. For example, OCGA § 16-6-5.1 (a) (9) defines "[s]exual contact" as "any contact involving the intimate parts of either person for the purpose of sexual gratification of either person." The portion of the statute under which Crumpton was charged, OCGA § 16-6-5.1 (b) (1), uses a slightly different term, "improper sexual contact." The plain language of OCGA § 16-6-5.1 (b) (1), however, shows that the phrase "the offense of improper sexual contact" is, as the wording clearly indicates, the name of the offense itself — not a material element of the offense. This offense is then defined in the statute by the actual material element of the offense: Knowingly engaging in "sexually explicit conduct" with another. Id.

To further illustrate this point, we note that, by contrast, improper "sexual contact" *is itself* a material element of the offense of second degree improper sexual contact pursuant to OCGA § 16-6-5.1 (c) (1), which provides that:

> A person commits the *offense of improper sexual contact* by [an] employee . . . in the second degree when such employee . . . knowingly *engages in sexual contact, excluding sexually explicit conduct*,[3] with another person whom such employee . . . knows or reasonably should have known is contemporaneously: [] Enrolled as a student at a school of which he or she is an employee . . . [.]"

(Emphasis supplied.) As is plain from the language of the statute, "sexually explicit conduct" is specifically excluded from the second-degree crime (OCGA § 16-6-5.1 (c) (1)) but is a material element of the first-degree crime (OCGA § 16-6-5.1 (b) (1)) charged herein.

---

[3] OCGA § 16-6-5.1 (e) (1) reiterates the legislature's intent to differentiate the meanings of "conduct" and "contact" in this context, as it provides: "This Code section shall not apply to sexually explicit conduct *or* sexual contact between individuals lawfully married to each other." (Emphasis supplied.)

OCGA § 16-6-5.1 (a) (10) provides that "'sexually explicit conduct' shall have the same meaning as set forth in Code Section OCGA § 16-12-100." The version of OCGA § 16-12-100 (2017) effective at the time of the crime provided that:

"Sexually explicit conduct" means actual or simulated:

(A) Sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(B) Bestiality;

(C) Masturbation;

(D) Lewd exhibition of the genitals or pubic area of any person;

(E) Flagellation or torture by or upon a person who is nude;

(F) Condition of being fettered, bound, or otherwise physically restrained on the part of a person who is nude;

(G) Physical contact in an act of apparent sexual stimulation or gratification with any person's unclothed genitals, pubic area, or buttocks or with a female's nude breasts;

(H) Defecation or urination for the purpose of sexual stimulation of the viewer; or

9

(I) Penetration of the vagina or rectum by any object except when done as part of a recognized medical procedure.[4]

OCGA § 16-12-100 (a) (4).

The definition that tracks the language of the indictment occurs at OCGA § 16-12-100 (a) (4) (D): "[l]ewd exhibition of the genitals or pubic area of any person." By its plain language, OCGA § 16-12-100 (a) (4) does not define this action as requiring that the "exhibition" occur "in-person," i. e., when two people are physically present with or proximate to one another. Nor does the plain language of OCGA § 16-6-5.1 (b) (1) limit the offense to those actions conducted when the victim and perpetrator are in one another's physical presence. See generally *Transp. Ins. Co. v. El Chico Restaurants*, 271 Ga. 774, 776 (524 SE2d 486) (1999) ("We must presume that the Legislature's failure to include the limiting language was a matter of considered

---

[4] Crumpton argues that "all of the[se] . . . acts contemplate actual, in-person contact." By their plain language and common definitions, however, masturbation, bestiality, lewd exhibition of the genitals, and some of the other listed crimes most certainly neither contemplate nor require for their execution either the physical presence of, or physical contact with, another human being. See OCGA § 16-12-100 (a) (4) (B), (C), (D), (H). By contrast, OCGA § 16-12-100 (a) (4) (G) by its plain terms requires "*[p]hysical contact* . . . with . . . any person's unclothed genitals, pubic area, or buttocks or with a female's nude breasts[.]" (Emphasis supplied.) We will not read into a statute language that the legislature chose not to include. *City of Suwanee v. Padgett*, 364 Ga. App. 34, 36 (2) (873 SE2d 712) (2022).

choice.") Under the plain language of the statute, such an "exhibition" could occur — as alleged in the instant case — via electronic transmission of a photograph.[5] Other definitions in OCGA § 16-12-100 support this conclusion. For example, OCGA § 16-12-100 (a) (5) includes photographs within its purview, defining "[v]isual medium" as "any film, photograph, negative, slide, magazine, or other visual medium." Its wording clearly contemplates the showing or viewing of images by a victim with no requirement linked to OCGA § 16-6-5.1 (b) (1) that the perpetrator be "in person" or physically present with the victim. Likewise, OCGA § 16-12-100 (a) (2) defines "[p]erformance" as "any play, dance, or *exhibit* to be *shown to or viewed by* an audience." (Emphasis supplied.)

As an appellate court, we "must construe statutes in a way that squares with common sense and sound reasoning. Furthermore, we have a duty to consider the results and consequences of any proposed construction and not construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature

---

[5] In keeping with the plain meaning of the statute, the indictment likewise identifies the name of the offense as improper sexual contact, but identifies the material elements of the offense as "knowingly engag[ing] in sexually explicit conduct" by "electronically transmit[ting] a photograph depicting [Crumpton] engaging in a lewd exhibition of the genitals[.]"

11

as evinced by the relevant text." (Citations and punctuation omitted.) *Mays*, 345 Ga. App. at 566.

Here, we have a first-degree offense under OCGA § 16-6-5.1 (b) (1) which, by its plain language, makes "engag[ing] in sexually explicit conduct" a material element of the crime, and names "the offense of sexual contact" but does not make "sexual contact" per se an element of the crime. By contrast, the second-degree offense under OCGA § 16-6-5.1 (c) makes "engag[ing] in sexual contact" a material element of the second-degree crime, yet specifically "exclud[es] sexually explicit conduct."

Unsurprisingly, the first-degree crime with which Crumpton was charged carries heavier fines and longer sentences than the second-degree crime. See OCGA § 16-6-5.1 (f), (g); see also OCGA § 17-10-4 (a). Crumpton argues that in-person sexual conduct is more dangerous than sending a photograph, and that providing more severe punishment for a first-degree crime that can be accomplished by electronic transmission of a photograph of the perpetrator's genitals than for a second-degree crime that actually requires physical contact[6] is absurd and cannot be what the

---

[6] We need not address the meaning of "sexual contact" in the statutes at issue here, but refer those inclined to further investigation to the legislative history of OCGA § 16-6-5.1, which, since its original 1983 enactment, has been amended at least 10 times. See, e. g., Ga. L. 1983, p. 721, § 1; see also Ga. L. 2019, p. 912, § 1 (removing the term "sexual assault" from the text of the statute, changing the

12

legislature intended.[7] Even if it is accomplished via images sent electronically, however, the first-degree crimes comprising "sexually explicit conduct" under OCGA § 16-6-5.1 (b) (1), as defined by OCGA § 16-12-100 (a) (4), could be significantly more severe and potentially damaging to a minor, see, e. g., OCGA § 16-12-100 (a) (4) (B) (bestiality), (E) (flagellation or torture of someone who is nude), (H) (defecation or urination for the purpose of sexual stimulation), (I) (penetration of the vagina or rectum by any object), than the second-degree "sexual contact" crime contemplated by OCGA § 16-6-5.1 (c), which by its own exclusion of "sexually explicit conduct" crimes thus does not include within the second-degree offense

definition of "sexual contact," adding the term "sexually explicit conduct," and providing for degrees of the crime); see generally *Chase v. State*, 285 Ga. 693, 695 (1), 696 (2) (681 SE2d 116) (2009), and *Bully v. State*, 357 Ga. App. 663, 672 (4) (c) (849 SE2d 271) (2020).

[7] In support of this argument, Crumpton points to *Vines v. State*, 269 Ga. 438, 438-439 (499 SE2d 630) (1998), arguing that in a case where the defendant was charged with child molestation for having sexually explicit telephone conversations with a child, the Supreme Court overturned the trial court's grant of a general demurrer, finding that acts of child molestation had to be committed in person. Unlike the statute at issue here, however, the plain language of the statute at issue in *Vines* — OCGA § 16-6-4 — provided that child molestation occurred when a person did "any immoral or indecent act *to or in the presence of or with* any child under the age of 16 years . . . ." (Emphasis supplied.) OCGA §§ 16-6-5.1 (b) (1) and 16-12-100 (a) (4) (D), see also OCGA § 16-12-100 (a) (5), contain no language requiring any act to be "in the presence" of the victim.

sexual intercourse and even physical contact with unclothed genitals or breasts. See OCGA § 16-12-100 (a) (4) (A), (G).

Similarly, it would be absurd, for example, to find that the legislature intended to criminalize electronic transmission of a photograph showing lewd exhibition of the genitals under OCGA § 16-6-5.1 (b) (1) if the victim and perpetrator were sitting together on a couch — but did not intend to criminalize transmission of the same photograph if transmission occurred when the victim and perpetrator were, for example, on two different floors at the same high school. See *State v. Mussman*, 289 Ga. 586, 589 (1) (713 SE2d 822) (2011) ("[T]his Court may construe statutes to avoid absurd results.") (citation and punctuation omitted). Under the plain meaning of OCGA § 16-6-5.1 (b) (1), Crumpton could not admit that she "engage[d] in sexually explicit conduct with" the minor student when she electronically transmitted to him a photograph lewdly exhibiting her genitals, and still be innocent of the offense.

The meaning of OCGA § 16-6-5.1 (b) (1), combined with its corresponding definitions of "sexually explicit conduct" in OCGA § 16-12-100, are, without question, difficult to interpret. The legislature may wish to again revisit and address some of the difficulties inherent in OCGA § 16-6-5.1. Despite these difficulties,

14

however, "[a] statute or regulation is not ambiguous merely because interpreting it is hard. . . . After using all tools of construction, there are few statutes or regulations that are truly ambiguous. And here, although the meaning of the applicable [statute] is not [immediately] obvious on its face, this does not mean the [statute] is ambiguous." *City of Guyton v. Barrow*, 305 Ga. 799, 803-804 (2) (828 SE2d 366) (2019).

Because the indictment charges Crumpton with a crime pursuant to OCGA § 16-6-5.1 (b) (1), the trial court erred in granting the general demurrer.

*Judgment reversed. Miller, P.J., concurs. Mercier, C. J., concurs in judgment only* .