**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 8, 2015**

# In the Court of Appeals of Georgia

A15A0340. AA-PROFESSIONAL BAIL BONDING v. DEAL.

DILLARD, Judge.

In this matter, AA-Professional Bail Bonding ("AAPB") appeals from the trial court's order denying its motion to aside the forfeiture of a bond it issued on behalf of Anne Kisudila following her arrest for shoplifting. Specifically, AAPB contends that the trial court erred in finding that Kisudila's entry into a pretrial diversion program did not release it from liability on the bond under a statute pertaining to that issue. For the reasons set forth *infra*, we affirm.

At the outset, we note that under OCGA § 9-11-60 (d) (3), a motion may be brought to set aside a judgment based upon, *inter alia*, a "nonamendable defect which appears upon the face of the record or pleadings." And a trial court's decision

regarding a motion to set aside a judgment will not be reversed absent a "showing of manifest abuse of discretion."[1]

Here, the undisputed record shows that on February 11, 2011, Kisudila was arrested for shoplifting. That same day, she was released on bond after entering into a bond agreement with AAPB as the surety. Then, on February 23, 2011, the Gwinnett County Solicitor (the "State") charged Kisudila, via accusation, with a single count of shoplifting. However, on April 13, 2011, Kisudila entered into a pretrial diversion program, the terms of which were specifically provided for in a "Notice of Diversion/Abeyance" signed by the solicitor, Kisudila, and her probation officer, and which was then filed with the clerk of court.

On May 25, 2011, it was determined that Kisudila failed to comply with the terms required by the pretrial diversion program, and therefore, her shoplifting case was placed back on the court's July 2011 arraignment calendar. When Kisudila failed to appear for arraignment on July 20, 2011, the State filed a motion for a bench warrant for her arrest and a forfeiture of her bond, both of which the trial court

---

[1] *A.A. Prof'l Bail v. State of Ga.*, 265 Ga. App. 42, 42 (592 SE2d 866) (2004) (punctuation omitted).

immediately granted. Subsequently, on December 1, 2011, the trial court held an execution hearing, after which it entered judgment on the bond forfeiture for $1,357.

Thereafter, AAPB filed a motion to set aside the order of bond forfeiture based upon a nonamendable defect in the record. Specifically, AAPB argued that it was released from liability on the bond under OCGA § 17-6-31 (d) (1) (C), prior to the order of bond forfeiture, because of Kisudila's entry into the pretrial diversion program. The trial court held a hearing on the issue, but ultimately denied AAPB's motion. AAPB then filed an application for discretionary review, which we granted. This appeal follows.

Although enumerated as three separate errors, AAPB essentially contends that the trial court erred in ruling that it was not released from liability on the bond under OCGA § 17-6-31 (d) (1) (C). Specifically, AAPB argues that the court erred in interpreting the statute to find that Kisudila's voluntary entrance into the pretrial diversion program did not constitute entrance into a *court ordered* pretrial diversion program. We disagree.

In interpreting any statute, we necessarily begin our analysis with familiar and binding canons of construction. And in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it

said and said what it meant."[2] Thus, we must afford the statutory text its plain and

ordinary meaning,[3] consider the text contextually,[4] read the text "in its most natural

and reasonable way, as an ordinary speaker of the English language would,"[5] and

seek to "avoid a construction that makes some language mere surplusage."[6]

[2] *Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013) (punctuation omitted); *see Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013) (same).

[3] *See Deal*, 294 Ga. at 172 (1) (a) ("To that end, we must afford the statutory text its plain and ordinary meaning." (punctuation omitted); *State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . ."); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 16 (1st ed. 2012) ("Textualism, in its purest form, begins and ends with what the text says and fairly implies.").

[4] *See Arizona v. Inter Tribal Council of Arizona, Inc.*, ___ U.S. ___, (II) (B) (133 SCt. 2247 186 LE2d 239) (2013) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *see also* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words. . . ."); SCALIA & GARNER, *supra* 167 ("Context is a primary determinant of meaning.").

[5] *Deal*, 294 Ga. at 172-73 (1) (a); *accord Martinez*, 325 Ga. App. at 273.

[6] *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (punctuation omitted); *accord Holcomb v. Long*, 329 Ga. App. 515, 518 (1) (765 SE2d 687) (2014); *see also* SCALIA & GARNER, *supra* 174 ("The surplusage canon holds that it is no more the court's function to revise by subtraction than by addition.").

Importantly, when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must "construe the statute accordingly."[7]

Bearing the foregoing principles in mind, OCGA § 17-6-31 (d)(1)(C) provides that a "surety shall be released from liability if, prior to entry of judgment, there is . . . [a] *court ordered* pretrial intervention program . . . ."[8] But here, Kisudila's entry into the pretrial diversion program[9] was based upon an agreement with the State's solicitor rather than as the result of an explicit court order. In fact, the trial court was not involved in any part of the State's decision to enter Kisudila into the program; its signature appears nowhere on the "Notice of Diversion/Abeyance" form, which both Kisudila and the State's solicitor signed; and the court did not monitor Kisudila's compliance—or lack thereof—with the terms of the program.

---

[7] *Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397) (2013) (punctuation omitted); *accord Chase v. State*, 285 Ga. 693, 695 (2) (681 SE2d 116) (2009); *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981).

[8] (Emphasis supplied).

[9] While OCGA § 17-6-31 (d) (1) (C) references a pretrial "intervention" program, the Solicitor's Office of Gwinnett County refers to this type of program as "Diversion/Abeyance." For the sake of simplicity, we will characterize this program as a pretrial diversion program throughout the opinion, except when we are directly quoting the statutory language.

Nevertheless, AAPB contends that the pretrial diversion program at issue here was, essentially, court ordered. Specifically, AAPB posits that because an accusation formally charging Kisudila was filed, the case was completely within the jurisdiction of the trial court, and consequently, any agreement between Kisudila and the State, including an agreement for the entry of *nolle prosequi*, required court approval.[10] Thus, AAPB reasons that because dismissal of the case in this instance required court approval, the Notice of Diversion/Abeyance—which provides that the charges *will be dismissed* if the defendant complies with the State's terms for the program—was, at least implicitly, similarly court-sanctioned.

We do not find AAPB's argument persuasive. While it is certainly true that an entry of *nolle prosequi* must be approved by the trial court,[11] as a practical matter, if the State chooses to no longer prosecute a defendant, the case will more than likely ultimately be dismissed. Thus, contrary to AAPB's argument, the language used in the Notice of Diversion/Abeyance does not necessarily write a check that can only be

---

[10] *See State v. Hanson*, 249 Ga. 739, 744 (2) (295 SE2d 297) (1982) (noting that the prosecutor, as part of the authority of the office, has the sole discretion to dismiss cases prior to indictment but that the prosecutor must obtain court approval for the entry of a *nolle prosequi*).

[11] *See id.*

6

cashed with the trial court's endorsement. Moreover, AAPB's reading of the term "court ordered" as embracing mere court approval of actions initiated wholly by the State is far too expansive. Indeed, such a reading does a disservice to the unequivocal term "order," which implies a directness lacking in the term "approve."[12] In any event, given the court's complete lack of involvement in this pretrial diversion program and the clear and unambiguous text of OCGA § 17-6-31 (d) (1) (C), indicating that *direct* involvement by the court is required in order to release a surety from liability for a principal entering into such a program, we find that the trial court's interpretation of

---

[12] *See* The Compact Oxford English Dictionary 1223 (2d ed. 1991) (defining "order" as, *inter alia*, to give order, to command, authoritatively direct . . . ."); *id.* at 66 (defining "approve" as, *inter alia*, to make good, assent to as good . . . .").

the statute is correct[13] and its denial of AAPB's motion to set aside did not amount to a manifest abuse of discretion.[14]

2. In somewhat of an alternative argument, AAPB contends that the General Assembly implicitly excised the requirement that a pretrial diversion program be court ordered before a surety can be relieved of liability under OCGA § 17-6-31 (d)

---

[13] *See Abdulkadir v. State*, 279 Ga. 122, 123 (2) (610 SE2d 50) (2005) (noting that when "the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden" (punctuation and footnote omitted)) *superseded by statute on other grounds as stated in Kirat v. State*, 286 Ga. App. 650, 653 (1) (649 SE2d 786) (2007); *Telecom USA, Inc. v. Collins*, 260 Ga. 362, 363 (1) (393 SE2d 235) (1990) (noting that the "golden rule" of statutory construction requires an appellate court to follow the literal language of the statute unless it "produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else" (punctuation omitted)); *Fidelity and Deposit Co. of Md. v. LaFarge Bldg. Materials, Inc.*, 312 Ga. App. 821, 823 (720 SE2d 288) (2011) (recognizing that the fundamental principle of statutory construction "requires us to follow the literal language of the statute unless it produces contradiction, absurdity or such an inconvenience as to insure that the legislature meant something else" (punctuation omitted)).

[14] *See Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)); *cf. Rosenberg Bails Bonds v. Orange County*, 663 SO2d 1389, 1389-90 (Fla. 5th DCA 1995 (holding that surety's obligation was relieved upon defendant's admission to a pretrial intervention program not ordered by a court pursuant to Fla. Stat. § 903.31, which provided that "[t]he original appearance bond shall not be construed to guarantee . . . conduct during or appearance after admission to a pretrial intervention program . . . .").

when it subsequently enacted OCGA § 15-18-80, which authorizes the State's prosecutors to create such programs. Once again, we disagree.

Under OCGA § 15-18-80 (a),

[t]he prosecuting attorneys for each judicial circuit of this state shall be authorized to create and administer a Pretrial Intervention and Diversion Program. The prosecuting attorney for state courts, probate courts, magistrate courts, municipal courts, and any other court that hears cases involving a violation of the criminal laws of this state or ordinance violations shall also be authorized to create and administer a Pretrial Intervention and Diversion Program for offenses within the jurisdiction of such courts.

Explaining the meaning of the statute, subsection (b) provides that "[i]t shall be the purpose of such a program to provide an alternative to prosecuting offenders in the criminal justice system."[15] Additionally, subsection (c) directs that "[e]ntry into the program shall be at the discretion of the prosecuting attorney based upon written guidelines."[16]

Reading OCGA § 15-18-80 in conjunction with OCGA § 17-6-31 (d), AAPB argues that the former's grant of authority to create pretrial diversion programs to

_____

[15] *See* OCGA § 15-18-80 (b).

[16] *See* OCGA § 15-18-80 (c).

prosecutors dispensed with the prosecutors' need to seek court orders for such programs. Consequently, AAPB asserts that the requirement in OCGA § 17-6-31 (d) (1) (C) that only court-ordered pretrial diversion programs can relieve a surety to liability is, at best, vestigial. But again, we are not persuaded.

AAPB is correct that statutes *in pari materia—i.e.*, statutes relating to the same subject matter—must be construed together.[17] However, while there is slight overlap between the focus of OCGA § 15-18-80 and this one small aspect of OCGA § 17-6-31 (d) (1) (C), the assertion that the two statutes relate to the same subject matter such that the former statute implicitly amended the latter one strains credulity. Indeed, AAPB's argument is belied by the fact that court-ordered pretrial diversion programs still currently exist (even if rare), despite the passage of OCGA § 15-18-80. And importantly, OCGA § 15-18-80 contains no language explicitly eliminating such programs.

More accurately characterized, AAPB argues that the court-ordered pretrial diversion requirement for relieving a surety of liability in OCGA § 17-6-31 (d) (1) (C) *conflicts* with the authority in OCGA § 15-18-80 that allows prosecutors to

---

[17] *See U.S. Bank Nat. Ass'n v. Gordon*, 289 Ga. 12, 15 (4) (709 SE2d 258) (2011) (punctuation omitted); *accord Tew v. State*, 320 Ga. App. 127, 130 (739 SE2d 423) (2013).

10

bypass such orders, and that we should resolve this conflict by reading "court ordered" out of OCGA § 17-6-31 (d). But as discussed in Division 1, *supra*, this Court is not at liberty to casually construe statutory language as "mere surplusage."[18] Thus, even if we were inclined to agree that the statutes conflicted, the resolution of any tension between the two statutes is a matter for our General Assembly to address.[19] And while AAPB may have sound policy arguments in favor of allowing a surety to be relieved of liability when a defendant enters into *any* type of pretrial diversion program, it is emphatically the province and duty of the judiciary to say what the law is, not what judges or parties believe it should be.[20]

Accordingly, for all of the foregoing reasons, the trial court did not manifestly abuse its discretion in denying AAPB's motion to set aside the bond forfeiture.

---

[18] *See In the Interest of L. T.*, 325 Ga. App. at 592.

[19] *See Layman v. State*, 280 Ga. 794, 795 (631 SE2d 107) (2006).

[20] *See generally Marbury v. Madison*, 5 U.S. 137, 177 (2 LEd 60) (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."); *Finney v. Dep't of Corr.*, 263 Ga. 301, 302 (1) (434 SE2d 45) (1993) (noting that the purpose of the judiciary is not to say what the law ought to provide, and that its authority extends only to interpreting the law as it was enacted by the legislature); *Able*, 321 Ga. App. at 636 ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies). . . .").

11

*Judgment affirmed.  McFadden, J., concurs and Ellington, P. J., concurs in judgment only.*