**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 31, 2019**

# In the Court of Appeals of Georgia

A19A1492. AGUILA v. KENNESTONE HOSPITAL, INC.

HODGES, Judge.

Rudy Aguila sued Kennestone Hospital, Inc. for fraud, negligent misrepresentation, and violations of the Racketeer Influenced and Corrupt Organizations ("RICO") Act arising from a hospital lien Kennestone filed following its treatment of Aguila. See OCGA § 44-14-470 et seq. Kennestone filed a motion to dismiss Aguila's complaint, arguing, inter alia, that Aguila failed to demonstrate that Kennestone made a false statement in its verified statement in support of the lien.[1] See OCGA § 44-14-471 (a) (2). The trial court granted Kennestone's motion, and

---

[1] Aguila also asserted a cause of action for unjust enrichment, unconscionability, or in the alternative, breach of contract. However, Aguila's counsel abandoned this cause of action during the hearing on Kennestone's motion to dismiss.

Aguila appeals. Because we conclude that this case is controlled adversely to Kennestone by our recent decision in *Clouthier v. The Medical Center of Central Ga.*, No. A19A0848, 2019 Ga. App. LEXIS 515 (decided Sept. 20, 2019), we reverse the trial court's order granting Kennestone's motion to dismiss. However, we remand this case to permit the trial court the opportunity to consider Kennestone's remaining grounds in support of its motion to dismiss.

Under Georgia law,

[a] motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. *If, within the framework of the complaint, evidence may be introduced which will sustain a grant of the relief sought by the claimant, the complaint is sufficient and a motion to dismiss should be denied.* In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Footnotes omitted; emphasis supplied.) *Anderson v. Flake*, 267 Ga. 498, 501 (2) (480 SE2d 10) (1997). To that end,

2

minimum pleading requirements are found in OCGA § 9-11-8 (a) (2) (A), which requires that the complaint contain "[a] short and plain statement of the claims showing that the pleader is entitled to relief," and we have held that the touchstone is fair notice — "this short and plain statement must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading."

(Citations omitted.) *Aetna Workers' Comp Access v. Coliseum Medical Center*, 322 Ga. App. 641, 651 (4) (746 SE2d 148) (2013).

So viewed, the record reveals that Aguila sustained injuries in a July 30, 2011 motor vehicle collision. An ambulance transported Aguila to Kennestone for treatment, where he was treated in the emergency room, admitted to the hospital, and subsequently released. At some point, Kennestone learned that Aguila's injuries were the result of a collision in which a third party could be liable; as a result, it filed a hospital lien pursuant to OCGA § 44-14-471 in the amount of $16,053.25. Aguila alleged that the lien was "for the full 'chargemaster' rate or 'sticker price' which does not represent a reasonable charge for the treatment [he] received, and . . . Kennestone [knew] it." Kennestone offered to reduce the lien and, ultimately, Aguila satisfied the lien for $11,700.

3

Aguila then filed the present action seeking damages from Kennestone for fraud, negligent misrepresentation, violations of the RICO Act, punitive damages, and attorney fees. Aguila averred that Kennestone accepted the chargemaster rate for only 27% of its patients and that, as a result, the true value of Aguila's treatment was $4,353.25. Kennestone answered and filed a motion to dismiss, primarily asserting that Aguila failed to demonstrate that Kennestone made a false statement in its OCGA § 44-14-471 verified statement in support of its lien.[2] Following a hearing, the State Court of Cobb County granted Kennestone's motion, concluding that Aguila failed to demonstrate that Kennestone made a false statement when it filed its hospital lien. This appeal followed.

1. In a single enumeration of error, Aguila argues that the trial court erred in granting Kennestone's motion to dismiss because the trial court incorrectly held that Kennestone did not make a false or misleading statement in its verified statement in support of its lien. This question is controlled by our recent decision in the functionally identical case of *Clouthier*, 2019 Ga. App. LEXIS 515.

In *Clouthier*, a plaintiff sued his treating hospital alleging that the hospital's "lien and charges were for the 'full chargemaster rate' or 'sticker price' of his medical

---

[2] For a summary of Kennestone's additional arguments, see Division 2 infra.

4

procedures, 'which [did] not represent a reasonable charge for the treatment received.'" (Footnote omitted.) 2019 Ga. App. LEXIS at *3 - *4. As a result, "Clouthier claimed that [the hospital] knew that the lien amount was not reasonable" and asserted causes of action for fraud, negligent misrepresentation, and RICO Act violations. Id at *4. The trial court granted the hospital's motion to dismiss, and Clouthier appealed.

> We reversed the trial court's order dismissing the case, emphasizing that
>
> we are at the motion-to-dismiss stage, prior to the completion of discovery, and we are not considering whether Clouthier's claims will ultimately prove meritorious or the likelihood that Clouthier will indeed be able to introduce evidence to support his claims. "If, within the framework of the complaint, evidence *may* be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." Thus, "it is the rare case in which a motion to dismiss for failure to state a claim, as opposed to a motion for summary judgment, will provide an appropriate procedural device for securing summary adjudication of the issues raised in a complaint . …"

(Citations omitted; emphasis in original.) *Clouthier*, 2019 Ga. App. LEXIS 515 at *2 - *3. Applying that standard, we concluded that it did not "appear to a legal certainty that Clouthier would be entitled to no relief under *any* state of facts which could be proved in support of his claims" and that, therefore, Cloutheir had stated

claims for fraud, negligent misrepresentation, and violations of the RICO Act. (Emphasis supplied.) Id. at *7 - *13 (1) (a) - (c).

In this case, Aguila's claims are identical to Clouthier's. See, e. g., *Tenant v. State*, 229 Ga. App. 20, 21, n. 2 (492 SE2d 909) (1997) ("we take judicial notice of the briefs of the parties in the prior appeal, which remain before us, as well as our factual and legal determinations as to the issues raised in the prior appeal"). Accordingly, for the reasons expressed in *Clouthier*, the same of which are adopted and incorporated herein by reference, we reverse the trial court's order granting Kennestone's motion to dismiss.

2. In its briefing in this Court, Aguila preemptively addresses Kennestone's additional arguments for dismissal, including that Aguila failed to demonstrate: (1) detrimental reliance to support his claims of fraud and negligent representation; (2) a "pattern of racketeering activity" in support of his RICO claim; and (3) that his complaint was timely filed. Although Kennestone raised these arguments in support of its motion to dismiss, the trial court did not resolve them in its order granting Kennestone's motion. Because we will not address arguments that were raised in, but not decided by, the trial court in the first instance, we remand this case to allow the trial court the opportunity to consider Kennestone's remaining arguments for

dismissal. See, e. g., *Plymel v. Teachers Retirement System*, 281 Ga. 409, 414-415 (5) (637 SE2d 379) (2006); *United HealthCare of Ga. v. Ga. Dept. of Community Health*, 293 Ga. App. 84, 92-93 (2) (d) (666 SE2d 472) (2008).

*Judgment reversed and case remanded with direction. Dillard, P. J., and Gobeil, J., concurring dubitante.*

A19A1492. AGUILA v. KENNESTONE HOSPITAL, INC.

DILLARD, Presiding Judge, concurring dubitante.

I concur in the majority opinion because it faithfully applies this Court's recent decision in *Clouthier v. Medical Center of Central Georgia, Inc.*,[1] which controls the resolution of this appeal. Nevertheless, I do so doubtfully because I question whether *Clouthier* was correctly decided.[2]

---

[1] No. A19A0848, 2019 WL 4564729 (Ga. App. Sept. 20, 2019).

[2] A concurrence dubitante is a concurrence that is given doubtfully. Unlike a concurrence in the judgment only, a special concurrence without a statement of agreement with all that is said, or a dissent (all of which render a decision physical precedent under Court of Appeals Rule 33.2), a concurrence dubitante is a full concurrence, albeit one with reservations. *See Benefield v. Tominich*, 308 Ga. App. 605, 611 n.28 (708 SE2d 563) (2011) (Blackwell, J., concurring dubitante); Jason J. Czamezki, *The Dubitante Opinion*, 39 AKRON L. REV. 1 (2006).

At the heart of *Clouthier*, *Medical Center, Inc. v. Bowden ("Bowden III")*,[3] and this case is the following question: Does a hospital engage in fraud or negligent misrepresentation by filing a lien under Georgia's hospital lien statute—*i.e.*, OCGA § 44-14-470 *et seq.*—at the chargemaster rate?[4] And because I answer that question in the negative, I take issue with our decision in *Clouthier*—which, unlike *Bowden III*, is a binding precedential opinion—to allow such claims to go forward.

While much ink has been spilled on this issue, it is essentially controlled by two statutes. First, OCGA § 44-14-470 provides that "[a]ny person, firm, hospital authority, or corporation operating a hospital . . . in this state *shall have a lien for the reasonable charges* for hospital . . . care and treatment of an injured person, which lien shall be upon any and all causes of action accruing to the person to whom the

---

[3] 348 Ga. App. 165 (2018) (physical precedent only). The second division of *Bowden III*—regarding class certification—would not be a binding precedent even in the absence of our physical-precedent rule because no other judge on the panel fully concurred in that division of the lead opinion. *See* Bryan A. Garner *et al.*, THE LAW OF JUDICIAL PRECEDENT 195 (2016) ("A plurality opinion results when a majority of the sitting court agrees on the ultimate result but not on 'a single rationale to support the result.'") (citation omitted).

[4] A hospital's chargemaster is a detailed list specifying charges for all procedures and treatments administered by the hospital, and these are the standard rates that all patients are charged for hospital services. The "chargemaster rate" represents the full amount of the hospital's billed charges, less any payments received before the hospital lien is filed.

care was furnished . . . ."[5] And second, OCGA § 44-14-471 (a) (2), which provides that

> [i]n order to perfect the lien provided for in Code Section 44-14-470, the operator of the hospital . . . [s]hall file in the office of the clerk of the superior court of the county in which the hospital . . . is located and in the county wherein the patient resides, if a resident of this state, a verified statement setting forth . . . the amount *claimed to be due* for the hospital . . . .[6]

Suffice it to say, these two statutory provisions must be construed together.[7] And in doing so, it is evident that a hospital—in order to perfect a lien under OCGA § 44-14-470—is required to file "a verified statement" for "the amount claimed to be due," but the perfected *lien* will only allow the hospital to *recover* the claimed amount

---

[5] (Emphasis supplied).

[6] (Emphasis supplied).

[7] *See Horn v. Shepherd*, 292 Ga. 14, 20 (1) (732 SE2d 427) (2012) (explaining that statutes relating to the same subject matter must be construed together); *U.S. Bank Nat'l Assoc. v. Gordon*, 289 Ga. 12, 15 (4) (709 SE2d 258) (2011) ("[S]tatutes 'in pari materia,' i.e., statutes relating to the same subject matter, must be construed together." (punctuation omitted)); *AA-Prof'l Bail Bonding v. Deal*, 332 Ga. App. 857, 861 (2) (775 SE2d 217) (2015) (physical precedent only) ("[S]tatutes *in pari materia—i.e.,* statutes relating to the same subject matter—must be construed together."); *see also* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 252-253 (2012) ("Statutes *in pari materia* are to be interpreted together, as though they were one law.").

3

if it can later demonstrate that those charges are "reasonable."[8] Nevertheless, Aguila attempts to conflate the directive given to a hospital to file a verified statement for the amount it claims to be due with the limitation of its lien to recover only "reasonable charges."[9] But there is no statutory requirement that hospitals must speculate as to whether their chargemaster rates will ultimately be considered reasonable by plaintiffs, insurance companies, courts, or any other person or entity, at the time they perfect their liens.[10] Nor are hospitals statutorily required to engage in the Sisyphean task of concocting alternative methods for determining the "reasonableness" of their claimed lien charges without any statutory guidance or directives. So, while a hospital's chargemaster rates in a particular case may ultimately prove to be unreasonable within the meaning of OCGA § 44-14-470, that does not mean that

---

[8] *Cf. Bowden v. The Med. Ctr., Inc.*, 297 Ga. 285, 285 (773 SE2d 692) (2015) (noting that "Georgia law gives a hospital a lien for the reasonable charges for its care and treatment of an injured person against all causes of action accruing to that person on account of her injuries, *and* establishes a process for the hospital to perfect its lien *for the amount claimed to be due*." (emphasis supplied)).

[9] Georgia's hospital lien statute does not define "reasonable charges" or provide any guidance to hospitals as to how they can or should determine the reasonableness of their claimed charges.

[10] A hospital has only 75 days after a patient is discharged to perfect its lien, *see* OCGA § 44-14-471 (a) (2) (A), and that patient—among others—must receive notice of the lien 15 days before it is filed. *See* OCGA § 44-14-471 (a) (1).

4

using those rates in a verified statement under OCGA § 44-14-471 (a) (2) amounts to fraud, negligent misrepresentation, or the like.[11] To the contrary, this is exactly what OCGA § 44-14-471 (a) (2) authorizes a hospital to do.[12] There is, then, no textual support for the proposition that a hospital's verified statement of the amount it claims to be due cannot be based on its standard, undiscounted (*i.e.*, chargemaster) rates *or* that a hospital must satisfy some undefined "reasonableness" standard at the time this statement is filed. As a result, Aguila has not sufficiently pleaded claims for fraud, negligent misrepresentation, or any other fraud-based claim (including predicate acts under Georgia's RICO Act).

Nevertheless, because *Clouthier* was decided by a unanimous panel of this Court only one month ago (and is also the subject of a pending certiorari petition[13]),

---

[11] *Cf. Kight v. MCG Health, Inc.*, 296 Ga. 687, 689 (1) (769 SE2d 923) (2015) (rejecting argument that "the Hospital's lien was required to be exact on the date it was filed or be considered void ab initio also fails" because "[t]here is nothing in OCGA § 44-14-470 et seq. imposing such a requirement, and we will not judicially legislate one"); *Gordon v. State*, 257 Ga. 335, 336-37 (359 SE2d 634) (1987) (holding that defendant did not commit theft by deception when he submitted invoices because "a very large markup" is not a false statement).

[12] Similarly, the clerk of the superior court "shall endorse the date and hour of the filing on the statement filed pursuant to Code Section 44-14-471; and . . . enter . . . the *amount claimed* . . . ." OCGA § 44-14-472 (emphasis supplied).

[13] *See Med. Ctr. of Cent. Ga. v. Clouthier*, Petition for Writ of Certiorari, S20C0326 (Ga. Oct. 10, 2019).

5

*and* the Supreme Court of Georgia recently granted certiorari in *Bowden III*,[14] I am not inclined to ask my colleagues to reconsider this precedent during the waning days of our "Distress" period.[15] For now, I am content to abide by *Clouthier* and let the

---

[14] On October 7, 2019, the Supreme Court of Georgia granted certiorari in Case No. S19C0494, *Bowden v. The Medical Center, Inc.*, and Case No. S19C0496, *The Medical Center, Inc. v. Bowden*, both of which concern this Court's decision in *Bowden III*. In doing so, our Supreme Court noted that it was particularly concerned with the following questions:

> 1. Did the Court of Appeals err in its determination that class certification was proper?
>
> 2. Did the Court of Appeals err in affirming the denial of summary judgment for The Medical Center, Inc. on common law claims for fraud and negligent misrepresentation?
>
> 3. Did the Court of Appeals err in reversing the denial of summary judgment for The Medical Center, Inc. on the claims under the Georgia RICO Act, OCGA § 16-14-1 *et seq.*?

[15] *See* Stephen Louis A. Dillard, *Open Chambers: Demystifying the Inner Workings & Culture of the Georgia Court of Appeals*, 68 MERCER L. REV. 1, 6 (I) (2016) ("The internal pressures placed upon the court of appeals by the two-term rule culminate three times a year with the constitutional deadlines for the December, April, and August terms. Indeed, while the court remains busy year-round, things get especially hectic the month before these deadlines—a time period we refer to as 'Distress.'"); *see also* Ga. Const. art. VI, § 9, para. 2 ("The Supreme Court and the Court of Appeals shall dispose of every case at the term for which it is entered on the court's docket for hearing or at the next term.").

certiorari process play out with our Supreme Court. I have no doubt that Kennestone

will soon join in the fray.[16]

I am authorized to state that Judge Gobeil joins in this concurrence dubitante.

---

[16] As an aside, I note that Georgia's hospital lien statute does not expressly provide for a private right of action against hospitals for alleged violations of the statute. *See Somerville v. White*, 337 Ga. App. 414, 417 (2016) (noting that "longstanding precedential authority" and OCGA § 9-2-8 (a) require a private right of action to be expressly provided for in the text of a statute and prohibit courts from creating implied causes of action); OCGA § 9-2-8 (a) ("No private right of action shall arise from any Act enacted after July 1, 2010, unless such right is expressly provided therein."). Also, although Aguila's claims against Kennestone are largely based on alleged statutory violations, he makes no mention of OCGA § 51-1-6, which would seem to apply to all of his claims in the absence of a expressly provided private right of action. *See Bellsouth Telecomm., LLC v. Cobb Cty.*, 342 Ga. App. 323, 336-39 (802 SE2d 686) (2017) (Dillard, P.J., concurring fully and specially) (noting the limited circumstances under which a claim may be brought under OCGA § 51-1-6), *overruled on other grounds by Bellsouth Telecomm., LLC v. Cobb Cty.*, 305 Ga. 144 (824 SE2d 233) (2019). And while the parties do not raise this issue, I do wonder whether Aguila can still maintain his claims against Kennestone in the absence of an expressly provided private right of action or without satisfying the stringent requirements of OCGA § 51-1-6. *See The Best Jewelry Mfg. Co. v. Reed Elsevier Inc.*, 334 Ga. App. 826, 835 (3) (a) (780 SE2d 689) (2016) (rejecting plaintiff's assertion that it "stated viable claims" for "common-law torts" because it "has not argued on appeal that these common-law claims have any basis other than the alleged statutory violations discussed and rejected above"); *see also* OCGA § 9-2-8 (a) & (b).