316 Ga. 701
FINAL COPY

S23A0273. SOUTHERN STATES CHEMICAL, INC. et al. v.
TAMPA TANK & WELDING, INC. et al.

McMillian, Justice.

In 2012, Southern States Chemical, Inc. and Southern States

Phosphate and Fertilizer Company (collectively, "Southern States")

sued Tampa Tank & Welding, Inc. ("Tampa Tank") and Corrosion

Control, Inc. ("CCI"), claiming damages from a faulty, leaky storage

tank that Tampa Tank had installed in 2002. After a decade of

litigation and multiple appeals, the trial court dismissed Southern

States's claims with prejudice, concluding that the claims were

barred by the applicable statute of repose. We affirm for the reasons

that follow.

As previously set out by the Court of Appeals, the record shows

that

> [Southern States] manufacture[s], buy[s], sell[s], and
> store[s] sulfuric acid in bulk at a facility in Savannah. In
> 2000, [Southern States] contacted Tampa Tank  about
> renovating a 24-foot tall, 130-foot wide storage tank (the

"[Duval Tank]") that had previously stored molten sulfur, such that it would be suitable for storing up to 2.2 million gallons of sulfuric acid. [Southern States] and Tampa Tank engaged in contract negotiations for at least nine months. On August 21, 2000, a contract in the form of a letter proposal drafted by Tampa Tank was signed and executed by [Southern States]. Prior to January 2002, the parties also engaged in subsequent written change orders altering the contract. There is no merger clause in any of these documents.

The initial letter proposal between Tampa Tank and [Southern States] contained the following express one-year warranty provision: "All material and workmanship are guaranteed for a period of twelve (12) months from the date of completion of this work." . . .

The [Duval Tank] renovation was completed in January 2002. The renovation required Tampa Tank to install an impervious plastic ("HDPE") liner directly on top of the [existing] steel floor of the tank. Tampa Tank then welded a new steel floor above the old floor of the tank, and a layer of sand filled the gap between the old floor and the new floor. In order to prevent corrosion of the new floor, Tampa Tank installed a cathodic corrosion control system ("cathodic system") in the sand layer. Tampa Tank installed, but did not design, the cathodic system; it contracted with CCI to provide the design, materials, on-site technical assistance, and testing of the system.

During installation, Tampa Tank's foreman consulted with CCI over the phone regarding the installation of the magnesium strips of the cathodic system, but CCI did not assist with the installation on[-]site. CCI's contract with Tampa Tank only required it to design the cathodic system, procure the materials for its installation, and test the system once installed. [Southern

2

States contends] that Tampa Tank misplaced magnesium ribbons, which are a key component of the cathodic system, drove a Bobcat bulldozer over the sand layer after the ribbons were installed, which tampered with the integrity of the system, and failed to properly seal the new floor, which left it open to corrosive rainwater.

[Southern States contends] that CCI failed to properly test, design and commission the cathodic system. After the tank's renovation was substantially completed in January 2002, CCI performed a post-installation commissioning inspection of the cathodic system. The report resulting from that inspection indicated that the cathodic system was working and properly installed. However, the cathodic system and the sand layer it was installed upon had been covered up with steel plates by the time CCI arrived on[-]site to perform its inspection. CCI inspected the cathodic system when the tank was empty, and it was possible that a portion of the steel plates was not in contact with the sand layer during the testing because there was no liquid pressing the plates down into the sand. [Southern States contends] that CCI failed to properly test the cathodic system by neglecting to confirm that Tampa Tank kept the sand layer dry, by failing to verify that Tampa Tank had not driven a Bobcat over the floor, and by conducting an inspection when the tank was empty, which only put the cathodic system to limited use. [Southern States also faults] CCI for not having an engineer on-site to ensure that the corrosion protection system was installed properly. CCI made no warranty to [Southern States] about the tank. After inspection, CCI prepared a post-installation report concluding that the Duval Tank's cathodic system had been properly installed and was fully functioning.[1] CCI

---

[1] "As part of its claim for breach of contract, [Southern States] had

sent the report to Tampa Tank, but not to [Southern States].

On July 3, 2011, it was discovered that sulfuric acid was leaking from the base of the Duval Tank.

*Southern States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 331 Ga. App. XXVI (Case No. A14A2012) (March 27, 2015) (unpublished) ("*Southern States I*").

In 2012, Southern States sued Tampa Tank and CCI for breach of contract, negligence, negligent undertaking, negligent misrepresentation, fraud, punitive damages, and attorney fees. The trial court granted summary judgment in favor of Tampa Tank and CCI, in part, on the grounds that the claims were barred by the eight-year statute of repose under OCGA § 9-3-51 (a)[2] ("the statute

_____

previously asserted that it was the intended beneficiary of the contract between Tampa Tank and CCI, that CCI had promised, in its post-installation report, that the cathodic protection system would last 43-45 years, and that this promise was intended for [Southern States's] benefit." *Southern States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 359 Ga. App. 731, 734 n.2 (858 SE2d 72) (2021) ("*Southern States IV*").

[2] OCGA § 9-3-51 (a) provides:

(a) No action to recover damages:

(1) For any deficiency in the survey or plat, planning, design, specifications, supervision or observation of construction, or construction of an improvement to real property;

(2) For injury to property, real or personal, arising out of any

4

of repose") and that Southern States could not show that it was prevented from filing suit because of fraud.[3] Southern States appealed, and in an unpublished opinion in March 2015, the Court of Appeals reversed the grant of summary judgment and remanded for the trial court to determine if a genuine issue of material fact existed as to whether Tampa Tank and CCI fraudulently concealed any defects in the renovation, installation, or testing of the Duval Tank and whether Southern States diligently pursued its claims after the discovery of the alleged fraud. See *Southern States I*, 331 Ga. App. XXVI.

On remand, in July 2015, the trial court again granted summary judgment in favor of Tampa Tank and CCI based on the running of the eight-year statute of repose and in an extensive order

---

such deficiency; or
    (3) For injury to the person or for wrongful death arising out of any such deficiency

shall be brought against any person performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement more than eight years after substantial completion of such an improvement.

[3] The trial court also made other rulings that are not pertinent to this appeal.

found that Southern States did not exercise due diligence to discover any fraud because it had never conducted any testing of the cathodic protection system within the statute of repose time period.[4] Southern States appealed, and in July 2016, the Court of Appeals affirmed in another unpublished opinion. See *Southern States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 338 Ga. App. XXVIII (Case No. A16A0272) (July 14, 2016) (unpublished) ("*Southern States II*"). However, the Court of Appeals also concluded that the trial court had ruled on the motions for summary judgment that were filed before the fourth amended complaint, such that the trial court did not expressly rule on whether the statute of repose barred the claim for breach of the express one-year warranty contract, which claim apparently had been raised for the first time in the fourth amended complaint. Southern States petitioned for writ of certiorari, which this Court denied in April 2017. See *Southern*

___

[4] At this point in the litigation, Southern States had filed its fourth amended complaint, which asserted breach of contract, breach of contract per se, negligence, negligence per se, negligent performance of undertaking pursuant to Section 324A of the Second Restatement of Torts, negligent misrepresentation, fraud, punitive damages, and attorney fees.

*States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 2017 Ga. LEXIS 276 (April 17, 2017).

Southern States filed a fifth amended complaint, and in December 2017, the trial court found that Tampa Tank and CCI were entitled to judgment as a matter of law once again based on the statute of repose, but this time specifically addressing the breach of express warranty claim and other claims raised in the fifth amended complaint. The trial court also concluded that Southern States's contract claims were barred by the six-year statute of limitations for breach of contract under OCGA § 9-3-24. Southern States appealed to this Court, asserting jurisdiction on the grounds that the Impairment Clause of the Georgia Constitution bars the application of the statute of repose to its claims. See Ga. Const. of 1983, Art. I, Sec. I, Par. X. We rejected that contention and ordered the case to be transferred to the Court of Appeals in November 2018.

In October 2019, the Court of Appeals affirmed the trial court's grant of summary judgment to Tampa Tank and CCI. See *Southern States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 353 Ga. App. 286

(836 SE2d 617) (2019) ("*Southern States III*"). In addition to affirming on the statute of repose, the Court of Appeals held that Southern States was not a third-party beneficiary to the contract between Tampa Tank and CCI, such that Southern States could not rely on CCI's representation to Tampa Tank that the system should last 43 to 45 years and that "the only actionable warranty from which Southern could seek damages is the one-year express warranty in its contract with Tampa Tank." *Southern States III*, 353 Ga. App. at 292 (2). The Court of Appeals also determined that it need not address Southern States's remaining enumerations of error, including whether the trial court had properly granted summary judgment on the contract claims based on the six-year statute of limitations. See id. at 296 (5).

Southern States filed a petition for writ of certiorari with this Court, but while the petition was pending, the Georgia General Assembly passed an amendment to OCGA § 9-3-51, which became effective July 1, 2020 ("the 2020 amendment"). See Ga. L. 2020, p. 37, § 1. The 2020 amendment added subsection (c) to OCGA § 9-3-

8

51, providing: "This Code section shall not apply to actions for breach of contract, including, but not limited to, actions for breach of express contractual warranties." Id. Section 2 of the 2020 amendment, which is uncodified, provides: "This Act shall apply to causes of action which have accrued on or after January 1, 1968." Ga. L. 2020, p. 37, § 2. In August 2020, this Court granted certiorari, vacated the Court of Appeals' judgment in *Southern States III*, and remanded the case to the Court of Appeals for consideration in light of the 2020 amendment. See *Southern States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 2020 Ga. LEXIS 650 (August 10, 2020).

In March 2021, the Court of Appeals issued an opinion affirming in part, reversing in part, and remanding the case to the trial court to reconsider in light of the 2020 amendment. See *Southern States Chem., Inc. v. Tampa Tank & Welding, Inc.*, 359 Ga. App. 731 (858 SE2d 72) (2021) ("*Southern States IV*"). Specifically, the Court of Appeals vacated Division 3 of its earlier opinion addressing the statute of repose and remanded on that issue; however, the Court of Appeals determined that our certiorari grant

9

order did not address Division 2, which concerned whether Southern States was a third-party beneficiary to the Tampa Tank-CCI contractual relationship, or Division 4, which concerned whether Southern States exercised due diligence to discover any alleged fraud, and that those divisions remain unchanged. The Court of Appeals then addressed whether the six-year statute of limitations barred the breach of express warranty claim and held that it did not. The Court of Appeals reversed the trial court on this issue,[5] see *Southern States IV*, 359 Ga. App. at 737-39 (2) (a), and this Court denied certiorari in September 2021. See *Tampa Tank & Welding, Inc. v. Southern States Chem., Inc.*, Case No. S21C0958 (September 21, 2021) (unpublished order).

In April 2022, the trial court granted Tampa Tank's motion to dismiss after considering the only remaining claim: Southern States's breach of contract claim based on the express one-year warranty. The trial court reiterated that the eight-year statute of

---

[5] The *Southern States IV* court also addressed several other issues not pertinent to this appeal.

10

repose as it stood prior to the 2020 amendment applied to the contract and barred Southern States's claims. Further, the trial court found that retroactive application of the 2020 amendment would deprive Tampa Tank of its vested right to be free from suit based on the statute of repose, which would violate due process under the federal and Georgia Constitutions.

The trial court also considered CCI's renewed motion to dismiss, which was limited to whether any of Southern States's remaining claims were pending against CCI. The trial court granted CCI's motion to dismiss in April 2022. Applying the law of the case established by the Court of Appeals in *Southern States III* and *IV*, the trial court concluded that Southern States was not a third-party beneficiary of CCI's alleged express warranties because Southern States did not provide consideration directly to CCI. As such, the only remaining claim was Southern States's breach of express warranty claim against Tampa Tank, and the trial court determined that Southern States had not asserted a claim against CCI on the express warranty. This appeal followed.

11

1. Southern States first argues that the trial court erred in granting Tampa Tank's motion to dismiss because the statute of repose as amended in 2020, rather than the previous version of the statute, applies to its breach of express warranty claim and under the 2020 amendment, the statute of repose would not bar the claim. On the other hand, Tampa Tank asserts that it has a vested right in the pre-2020 version of the statute of repose and that applying the 2020 amendment retroactively to Southern States's pre-existing breach of express warranty claim would violate due process.

On appeal from a grant of a motion to dismiss, we review a trial court's decision de novo. See *Norman v. Xytex Corp.*, 310 Ga. 127, 130 (2) (848 SE2d 835) (2020).

> A motion to dismiss for failure to state a claim upon which relief may be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.

Id. at 130-31 (2) (citation and punctuation omitted). Upon review,

12

"any doubts regarding the complaint must be construed in favor of the plaintiff." Id. at 131 (2).

We start with first principles. The Due Process Clause of the Fourteenth Amendment to the United States Constitution,[6] which has language similar to the Due Process Clause in Georgia's Constitution,[7] "protects the interests in fair notice and repose that may be compromised by retroactive legislation." *Landgraf v. USI Film Products*, 511 U.S. 244, 266 (IV) (A) (114 SCt 1483, 128 LE2d 229) (1994). "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic."[8] Id. at 265 (IV) (A). See *Deal v.*

---

[6] The Fourteenth Amendment to the United States Constitution provides that no State may "deprive any person of life, liberty, or property, without due process of law."

[7] Ga. Const. of 1983, Art. I, Sec. I, Par. I provides: "No person shall be deprived of life, liberty, or property except by due process of law." Because the parties do not make any separate argument that the Due Process Clause of the Georgia Constitution provides more protections than the federal Constitution in this context, we will proceed with our analysis in reliance on the existing federal precedent and federally-influenced Georgia precedent. See *Rockdale County v. U.S. Enterprises, Inc.*, 312 Ga. 752, 761 (3) n.10 (865 SE2d 135) (2021) (noting that parties had made no argument that the Georgia Due Process Clause provided greater or different protection against vague laws).

[8] Because the parties do not rely on the Georgia Constitution's separate

13

*Coleman*, 294 Ga. 170, 174 (1) (b) (751 SE2d 337) (2013) ("Generally speaking, the retroactive application of statutes has long been disfavored in the law, even if it is not always forbidden." (citing *Landgraf*, 511 U.S. at 265 (IV) (A)). That is because "the principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." *Landgraf*, 511 U.S. at 265 (IV) (A) (citation and punctuation omitted). The "largest category of cases" in which this presumption against retroactivity has been applied "has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." Id. at 271 (IV) (A). See also *Logan v. Zimmerman Brush Co.*, 455 U.S. 422,

prohibition against the passage of retroactive laws, we do not address whether the application of the 2020 amendment would violate that provision. See Ga. Const. of 1983, Art. I, Sec. I, Par. X ("No bill of attainder, ex post facto law, retroactive law, or laws impairing the obligation of contract or making irrevocable grant of special privileges or immunities shall be passed."). However, we note that many of our cases addressing whether a statute can be applied retroactively refer simply to "constitutional claims" without delineating whether the claim arose under the Due Process Clause of the federal Constitution or the Georgia Constitution or both or the Georgia Constitution's retroactive law clause.

14

428 (II) (A) (102 SCt 1148, 71 LE2d 265) (1982) ("a cause of action is a species of property protected by the Fourteenth Amendment's Due Process Clause"); *William Danzer & Co., Inc. v. Gulf & Ship Island R. Co.*, 268 U.S. 633, 637 (45 SCt 612, 69 LE 1126) (1925) (retroactively reviving an extinguished cause of action deprives a defendant of its property without due process).

In determining whether legislation can be applied retroactively, we engage in a two-part analysis. Because of the presumption against retroactive legislation, this Court will initially "insist upon some clear indication in the statutory text that a statute is to be applied retroactively before so applying it." *Deal*, 294 Ga. at 174-75 (1) (b). It is only when such a clear indication is present that we then consider whether retroactive application is unconstitutional, and in this context, an unconstitutional retroactive application of legislation would be one that would "injuriously affect the vested rights of citizens." Id. at 175 (2) (punctuation omitted; citing *Bullard v. Holman*, 184 Ga. 788, 792 (2) (193 SE 586) (1937)).

(a)    We thus start our analysis by first determining whether the legislature has clearly indicated that the 2020 amendment is to be applied retroactively. We easily conclude that it has because the 2020 amendment explicitly provides that it is to be applied to causes of action that have accrued on or after January 1, 1968. See Ga. L. 2020, p. 37, § 2/SB 451; *Deal*, 294 Ga. at 175 (1) (b) (holding that the explicit language in the statutory amendment at issue was sufficient to provide clear indication of the legislature's intent for retroactive application).

(b)    We now turn to the question of whether Tampa Tank had a vested right in the pre-2020 version of the statute of repose such that retroactive application of the 2020 amendment would be unconstitutional.

Generally, a vested right is an interest "which it is proper for the state to recognize and protect and of which the individual cannot be deprived arbitrarily without injustice." *Deal*, 294 Ga. at 177 (2) (a) (citation and punctuation omitted). But, as we have explained, this description does not provide a "meaningful standard that can be

16

applied to discern whether a statutory right might properly be capable of vesting," id., and Georgia's jurisprudence has not been clear on whether a statute of repose creates a vested right.

In *Deal*, we attempted to provide some clarity on the analysis of whether a right is vested by exploring the nature of a vested right. One such characteristic of a vested right is that it is a private unalienable right of an individual as opposed to a public right. See *Deal*, 294 Ga. at 178-81 (2) (a). Unlike public rights, rights that belong to "the People in common," private rights benefit "[a] particular individual." Id. at 179-80 (2) (a). See also *Bullard*, 184 Ga. at 791 (2) (distinguishing public rights from those related to the rights of a specific litigant or for the benefit of a "particular individual or calling"). Compare *Deal*, 294 Ga. at 181 (2) (a) (citing *Mikesell v. RP Motorsports, Inc.*, 283 Ga. 476, 476-77 (660 SE2d 534) (2008), which held that the "offer of settlement provisions of Tort Reform Act of 2005 could not be applied constitutionally in a lawsuit between private parties for money damages, insofar as a private right of action accrued to the plaintiff prior to the effective date of

17

the Act"), with id. at 184 (2) (b) (holding that the Open Records Act in question concerns the right of access to public records and is a public right of the People as a whole, and because that public right "could not vest in any particular persons" . . . "there is no constitutional impediment to the retroactive modification of the Act by subsequent legislation").

OCGA § 9-3-51 (a) (1)[9] provides in relevant part:

> No action to recover damages:
>      (1) For any deficiency in the survey or plat, planning, design, specifications, supervision or observation of construction, or construction of an improvement to real property
> . . .
> shall be brought against any person performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement more than eight years after substantial completion of such an improvement.

It is clear that any right created by the statute of repose vests in a particular person, like Tampa Tank, who is relying on the statute to assert that a claim brought against it by another party has been extinguished. See *Mikesell*, 283 Ga. at 476-77 (offer of settlement

---

[9] The 2020 amendment did not alter this language.

18

statute applies to private parties in a suit for money damages). Thus, the private nature of the right created by the statute of repose supports that it may be a vested right.

In addition to the public versus private right distinction, we have also traditionally considered whether a right is "substantive" or "procedural" in determining whether a right is vested as "there are no vested rights in any course of procedure." *Deal*, 294 Ga. at 177 (2) (a) (citation and punctuation omitted). A statute "which affects substantive rights may operate prospectively only." *Browning v. Maytag Corp.*, 261 Ga. 20, 21 (401 SE2d 725) (1991) (citation and punctuation omitted). See also *O'Leary v. Whitehall Constr.*, 288 Ga. 790, 792 (2) (708 SE2d 353) (2011) (new legislation that does not impair a party's substantive rights may operate retrospectively). "Substantive law is that law which creates rights, duties, and obligations. Procedural law is that law which prescribes the methods of enforcement of rights, duties, and obligations." *EHCA Cartersville, LLC v. Turner*, 280 Ga. 333, 337 (3) (626 SE2d 482) (2006) (citation and punctuation omitted). See *Deal*, 294 Ga. at

19

175 (1) (b) n.12. Put another way, "where a statute governs only procedure of the courts . . . it is to be given retroactive effect absent an expressed contrary intention." *Polito v. Holland*, 258 Ga. 54, 55 (2) (365 SE2d 273) (1988).

Although this Court has determined that a statute of limitation is procedural and creates no vested right, we have never expressly considered whether a statute of repose is substantive or procedural in nature. See *Simmons v. Sonyika*, 279 Ga. 378, 379 (614 SE2d 27) (2005) ("A statute of limitation is a procedural rule limiting the time in which a party may bring an action for a right which has already accrued." (citation and punctuation omitted)); *Vaughn v. Vulcan Materials Co.*, 266 Ga. 163, 164 (1) (465 SE2d 661) (1996) ("There is no vested right in a statute of limitation[.]"). However, we have considered the nature of statutes of repose and explained that, in contrast to a statute of limitation, "[a] statute of repose stands as an unyielding barrier to a plaintiff's right of action," is "absolute," and "destroys the previously existing rights so that, on the expiration of the statutory period, the cause of action no longer

exists." *Simmons*, 279 Ga. at 379 (citation and punctuation omitted).

Also, a statute of repose "limits the time within which an action may

be brought and is not related to the accrual of any cause of action."

*Wright v. Robinson*, 262 Ga. 844, 845 (1) (426 SE2d 870) (1993)

(citation and punctuation omitted). Moreover, although fraud,

among other things, can toll a statute of limitations, we have held

that "nothing stops the abrogation of the action by the statute of

repose[,]" since tolling "would deprive the defendant of the certainty

of the repose deadline and thereby defeat the purpose of a statute of

repose."[10] *Simmons*, 279 Ga. at 380 (citations and punctuation

omitted).

---

[10] Tampa Tank argues that *Browning*, 261 Ga. at 20, supports its claim that a statute of repose is substantive and that it has a vested right in the pre-2020 statute of repose. However, *Browning* is distinguishable. In that case, the United States Court of Appeals for the Eleventh Circuit certified a question to this Court asking whether a statute of repose for products liability actions can bar a cause of action that accrued before the statute was enacted. We answered in the negative, reasoning that because the plaintiffs' cause of action accrued at the time of the injury, they had a substantive right to bring their cause of action at that time, which could not be defeated by the subsequently enacted statute of repose. Id. at 21. Thus, in *Browning*, we addressed the question of whether the plaintiffs had a substantive right in their cause of action, not as in this case, whether the defendant has a substantive right in the statute of repose.

21

Thus, these cases demonstrate that a statute of repose is materially different than a statute of limitations in that a statute of repose extinguishes a plaintiff's right to bring a cause of action after the repose deadline and in that a defendant has the right to rely on the certainty of the repose deadline. These distinctions strongly support that a statute of repose is substantive in nature.

In considering whether a statute of repose is procedural or substantive in nature, we also find it instructive that the majority of other state courts that have considered the issue have concluded that repose statutes are substantive for retroactivity purposes. See, e.g., *Davis v. Scottish Re Group Ltd.*, 88 NE3d 892, 897 (IV) (N.Y. 2017) ("[R]epose statutes exhibit a substantive texture, nature and consequence, different from regular statutes of limitation, and thus are substantive. In other words, unlike a statute of limitations, a statute of repose envelopes both the right and the remedy." (citations and punctuation omitted)); *Nathan v. Whittington*, 408 SW3d 870, 873 (Tex. 2013) ("While statutes of limitations operate procedurally to bar the enforcement of a right, a statute of repose

22

takes away the right altogether, creating a substantive right to be free of liability after a specified time." (citation and punctuation omitted)); *Ex parte Liberty Nat. Life Ins. Co.*, 825 S2d 758, 765 (II) (Ala. 2002) ("[W]hile a statute of limitations generally is procedural and extinguishes the remedy rather than the right, repose is substantive and extinguishes both the remedy and the actual action." (citation and punctuation omitted)); *Harding v. K.C. Wall Products, Inc.*, 831 P2d 958, 967 (Kan. 1992) (a statute of limitations is "remedial and procedural" but a statute of repose is substantive). Similarly, multiple federal circuits have held the same. See, e.g., *Augutis v. United States*, 732 F3d 749, 752-53 (II) (A) (7th Cir. 2013) ("A statute of limitations is a procedural device whose running simply bars suit. A statute of repose by contrast is substantive. It extinguishes any right to bring any type of cause of action against a party, regardless of whether such action has accrued." (cleaned up)); *Anderson v. United States*, 669 F3d 161, 164-65 (III) (A) (4th Cir. 2011) (In contrast with a statute of limitations, a statute of repose "creates a substantive right in those protected to be free from

liability after a legislatively-determined period of time." (citation and punctuation omitted)).

Likewise, "[m]ost state courts addressing the issue of the retroactivity of statutes have held that legislation which attempts to revive claims which have been previously time-barred [by a statute of repose] impermissibly interferes with vested rights of the defendant, and thus violates due process." *State of Minn., ex rel., Hove v. Doese*, 501 NW2d 366, 369-70 (S.D. 1993) (citing numerous cases from different states). See, e.g., *Harding*, 831 P2d at 968 (The "legislature *cannot* revive a cause of action barred by a statute of repose, as such action would constitute the taking of property without due process." (emphasis in original)); *Firestone Tire & Rubber Co. v. Acosta*, 612 S2d 1361, 1363-64 (Fla. 1992) (a statute of repose extinguishes a cause of action, and repealing the statute of repose cannot revive the case).

Based on the nature of a statute of repose, we conclude that a statute of repose creates a substantive right in being free from liability for a claim after a fixed period of time and join the majority

24

of jurisdictions that have reached that conclusion. In so holding, we overrule any contrary decisions of the Court of Appeals, to the extent that they hold that repose statutes only implicate procedural rights and may be applied retroactively, including, *Bagnell v. Ford Motor Co.*, 297 Ga. App. 835, 837 (1) (678 SE2d 489) (2009) ("statutes of repose look only to remedy and not to substantive rights" (citation and punctuation omitted)); *Bieling v. Battle*, 209 Ga. App. 874, 878 (1) (434 SE2d 719) (1993) ("statutes of limitation and statutes of repose look only to remedy and not to substantive rights" (citation, punctuation and emphasis omitted)); and *LFE Corp. v. Edenfield*, 187 Ga. App. 785, 787 (371 SE2d 435) (1988) ("Statutes of limitation and statutes of repose 'look only to remedy and not to substantive rights.'" (citation omitted)).

Accordingly, we conclude that Tampa Tank had a substantive, vested right to be free from liability for Southern States's contract claims as set out in the pre-2020 version of OCGA § 9-3-51 and that, under the Due Process Clause of the federal and Georgia Constitutions, the 2020 amendment cannot be applied retroactively

to Southern States's breach of express warranty claim.[11]

2. Southern States next argues that even if the 2020 amendment does not apply retroactively, the trial court erred in applying the pre-2020 version of OCGA § 9-3-51 to bar its breach of warranty claim because it claims that the statute of repose only applies to claims that rely on proof of negligence as an element and does not apply to contract claims.

In considering a statute's meaning, "courts must afford the words of the statute their ordinary signification, see OCGA § 1-3-1 (a), and we must presume that the General Assembly meant what it said and said what it meant." *Arby's Restaurant Group, Inc. v. McRae*, 292 Ga. 243, 245 (1) (734 SE2d 55) (2012) (citation and punctuation omitted). "Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts

---

[11] Because we have determined that the 2020 amendment cannot be applied retroactively consistent with Due Process, we need not consider Tampa Tank's arguments that the retroactive application of the 2020 amendment would also violate the United States Constitution's Contracts Clause and the Georgia Constitution's Impairment of Contracts Clause. See U.S. Const., Art. I, Sec. X; Ga. Const. of 1983, Art. I, Sec. I, Par. X.

must construe the statute accordingly. In fact, where the language of a statute is plain and unambiguous, judicial construction is not only unnecessary but forbidden." *Chase v. State*, 285 Ga. 693, 695 (2) (681 SE2d 116) (2009) (citations and punctuation omitted). See also *Lumpkin County v. Ga. Insurers Insolvency Pool*, 292 Ga. 76, 78 (2) (734 SE2d 880) (2012) (where "statutory language is clear and does not lead to an unreasonable or absurd result, it is the sole evidence of the ultimate legislative intent" (cleaned up)).

The relevant part of the pre-2020 statute of repose provides:

No action to recover damages . . . [f]or any deficiency in the survey or plat, planning, design, specifications, supervision or observation of construction, or construction of an improvement to real property . . . shall be brought against any person performing or furnishing the survey or plat, design, planning, supervision or observation of construction, or construction of such an improvement more than eight years after substantial completion of such an improvement.

Former OCGA § 9-3-51. See Ga. L. 1968, p. 127, § 1. The statute applies to an "action to recover damages," without any exception for contract-based claims. And Southern States's breach of warranty claim asserts an action to recover damages against Tampa Tank and

27

CCI for a "deficiency" in the "construction of an improvement to real property," which falls under the clear language of the statute. See *White v. State*, 305 Ga. 111, 118 (1) (823 SE2d 794) (2019) (where plain language of the statute has no exception for certain types of evidence, the plain meaning controls). Thus, we conclude that under the plain language of the pre-2020 version of OCGA § 9-3-51, it would apply to Southern States's breach of express warranty claim.[12]

Southern States also asserts that the original 1968 statute of repose, which was in effect until the 2020 amendment, was never intended to apply to contract claims because the General Assembly did not adopt specific language from a model statute of repose that was developed in the 1960s by architectural, engineering, and contracting industry representatives.[13] Southern States asserts that

---

[12] Because there is no ambiguity in the language, we do not need to resort to other canons of statutory construction, such as the absurdity doctrine or the "incongruous result" argument raised by Southern States. See, e.g., *City of Marietta v. Summerour*, 302 Ga. 645, 654 (2) (807 SE2d 324) (2017) (analyzing absurdity doctrine only after acknowledging that the introductory provision of the statute is "somewhat ambiguous").

[13] This Court has recognized that legislation similar to the statute of repose in OCGA § 9-3-51 "[was] enacted in many jurisdictions in response to the demands of architects, engineers and contractors who wanted to be

28

the adoption of the omitted language would have made clear that the statute of repose applied to any "action, whether in contract (oral or written, sealed or unsealed), in tort or otherwise, to recover damages." According to Southern States, OCGA § 9-3-51 was not intended to apply to contract actions because the General Assembly did not adopt the phrase "whether in contract (oral or written, sealed or unsealed), in tort or otherwise" after the words "No action" in subsection (a) but included the word "tort" in subsection (b).[14] But the natural import of Southern States's argument is that the omission of the phrase "whether in contract (oral or written, sealed

---

provided with immunity from suit after a reasonable period of time from their completion of an improvement to real property." *Benning Constr. Co. v. Lakeshore Plaza Enterprises, Inc.*, 240 Ga. 426, 427 (241 SE2d 184) (1977). Southern States cites to the record of a hearing from a Congressional subcommittee to establish the text of this proposed model code. See Amend the Statute of Limitations, Hearing before Subcomm. No. 1 of the House Comm. On the District of Columbia, 90th Cong. (1967), at pp. 31-34.

[14] Former OCGA § 9-3-51 (b) provided in relevant part:

Notwithstanding subsection (a) of this Code section, in the case of such an injury to property or the person or such an injury causing wrongful death, which injury occurred during the seventh or eighth year after such substantial completion, an action in tort to recover damages for such an injury or wrongful death may be brought within two years . . . .

That language remains in the current version of the statute. See OCGA § 9-3-51 (b).

or unsealed), in tort or otherwise" to modify "action" would mean that not only contract actions would be excepted, but also other actions sounding "in tort or otherwise." This would result in a nonsensical meaning, which we decline to adopt. See *Riley v. State*, 305 Ga. 163, 168 (3) (824 SE2d 249) (2019) ("this Court may construe statutes to avoid absurd results"); *State v. Mulkey*, 252 Ga. 201, 204 (2) (312 SE2d 601) (1984) ("It is the duty of the court to consider the results and consequences of any proposed construction and not so construe a statute as will result in unreasonable or absurd consequences not contemplated by the legislature." (citation and punctuation omitted)).

Likewise, we reject the assertion that just because subsection (b) provides specific details about certain tort claims, it means that the entire statute is applicable *only* to tort claims. Instead, a natural and reasonable reading of the word "tort" in subsection (b) is that subsection (b) sets out a separate rule for tort claims under certain circumstances.

Southern States further argues that the statute of repose is

30

limited to tort-based claims, citing *Virginia Ins. Reciprocal v. Pilzer*, 278 Ga. 190 (599 SE2d 182) (2004), *Benning Constr. Co. v. Lakeshore Plaza Enterprises, Inc.*, 240 Ga. 426 (241 SE2d 184) (1977), and *Nat. Svc. Indus., Inc. v. Ga. Power Co.*, 294 Ga. App. 810 (670 SE2d 444) (2008), but we find each of these cases distinguishable. *Pilzer* dealt with OCGA § 9-3-71 (b),[15] a medical statute of repose that explicitly requires a "negligent or wrongful act or omission" to have occurred in order for the statute to apply. See *Pilzer*, 278 Ga. at 190. And we see nothing in *Benning* that holds that a statute of repose is limited to tort claims.[16] See *Benning*, 240 Ga. 426. Finally, in *Nat. Svc.*

---

[15] OCGA § 9-3-71 (b) provides: "Notwithstanding subsection (a) of this Code section, in no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred."

[16] Southern States points to the following language in *Benning* as supporting its argument:

> Prior to the enactment of the [statute of repose], an architectural firm or construction company which designed or built a structure could be sued at any time by third parties no matter how many years had passed since the architects' or contractors' work had been completed, so long as the third party brought suit within the applicable statute of limitation, commencing to run from the date of injury caused by the alleged defect.

*Benning*, 240 Ga. at 427. Based on this language, Southern States argues that "[t]hese prospective 'third-party' plaintiffs would obviously not be suing for breach of warranty, because contractors sell warranties to second-party

31

*Indus.*, the Court of Appeals simply held that the statute of repose in OCGA § 9-3-51 did not apply to bar the suit because the claims did not allege any deficiency covered by that statute, and the court did not address whether the statute of repose could apply to contract claims. See *Nat. Svc. Indus.*, 294 Ga. App. at 813 (3).

Southern States does not seriously dispute that the storage tank was substantially completed in 2002, nor is it disputed that Southern States filed its initial complaint in 2012. Because the pre-2020 statute of repose required Southern States to file its action within eight years of substantial completion of the improvement, we conclude that the pre-2020 statute of repose bars Southern States's breach of express warranty claim, and the trial court properly

---

building owners, not to third parties." According to Southern States, it follows that these claims by "third parties" could only sound in tort, and thus, OCGA § 9-3-51 only applies to tort claims.

Southern States's argument is without merit. This Court concluded in *Benning* that the preexisting six-year statute of limitation applied to the contract claims in that case and that the Court of Appeals erred in applying the eight-year statute of repose as an extended statute of limitation for those claims, instead of considering the statute of repose as an "outside time limit" "within which preexisting statutes of limitation would continue to operate." *Benning*, 240 Ga. at 428. Thus, *Benning* clarified that OCGA § 9-3-51 is not a statute of limitation; it did not, in any way, address the nature of claims to which the statute of repose applied.

32

dismissed it.[17]

3. Lastly, Southern States argues that the trial court erred in applying the "law of the case" from the Court of Appeals' decisions in *Southern States III* and *IV* in granting CCI's motion to dismiss. In *Southern States III* and *IV*, the Court of Appeals held that "the only actionable warranty from which Southern [States] could seek damages is the one-year express warranty in its contract with Tampa Tank" and that Southern States could not pursue a breach

_____

[17] In supplemental briefing, Southern States also argues that even if the pre-2020 statute of repose applies, it would not bar Southern States's breach of warranty claim because Tampa Tank is estopped from claiming the statute of repose as a defense under the doctrines of promissory estoppel, estoppel by contract, and equitable estoppel. But Southern States did not argue estoppel by contract or promissory estoppel in the trial court, so those arguments were not preserved. See *Pfeiffer v. Ga. Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002) ("[A]bsent special circumstances, an appellate court need not consider arguments raised for the first time on appeal." (footnote omitted)).

Although Southern States has previously asserted that Tampa Tank is equitably estopped from raising the 2020 statute of repose as a defense, that argument was previously rejected by the Court of Appeals in *Southern States II*. There, the Court of Appeals affirmed the trial court's conclusion that equitable estoppel does not preclude Tampa Tank from asserting a statute of repose defense because Southern States failed to establish that a genuine issue of material fact existed as to whether Tampa Tank "*concealed* information with an *intent* to deceive and prevent Southern [States] from discovering wrongdoing and injury," which is required for equitable estoppel to apply. *Southern States II*, 338 Ga. App. XXVIII (emphasis in original). Because Southern States has already litigated this issue, the law of the case rule bars this Court from revisiting it. See OCGA § 9-11-60 (h).

of contract claim against CCI based on an agreement between CCI and Tampa Tank because Southern States was not a third-party beneficiary to that contract. *Southern States IV*, 359 Ga. App. at 737 (2) (a) n.7; *Southern States III*, 353 Ga. App. at 292 (2). On remand, the trial court found that these rulings constituted law of the case and therefore Southern States's breach of contract claim against CCI has already been resolved against it. On appeal, Southern States asks this Court to create an exception to the "law of the case" doctrine because the Court of Appeals' holdings in *Southern States III* and *IV* are fatally flawed or, alternatively, are clearly erroneous and work a manifest injustice.

Under the "law of the case" doctrine, "any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings in that case in the lower court and in the Supreme Court or the Court of Appeals as the case may be." OCGA § 9-11-60 (h). Thus, the trial court in this case, as well as this Court, are bound by the Court of Appeals' decisions in *Southern States III* and *IV* and are precluded by the law of the case from revisiting those

34

prior holdings. See *Hollmon v. State*, 305 Ga. 90, 91 (1) (823 SE2d 771) (2019); *Pirkle v. Turner*, 281 Ga. 846, 847 (1) (642 SE2d 849) (2007).

Georgia courts have never held that an exception exists to the "law of the case" doctrine where a prior ruling was clearly erroneous or would otherwise create a manifest injustice. To the contrary, this Court has said that the law of the case applies despite contentions that a ruling below is erroneous. See *Hollmon*, 305 Ga. at 91 (1) ("Law of the case" doctrine applies "despite all contentions that prior rulings in the matter are erroneous." (citation and punctuation omitted)); *Security Life Ins. Co. of America v. Clark*, 273 Ga. 44, 46 (1) (535 SE2d 234) (2000) ("[A]ppellate rulings remain binding as between parties to a case, so long as the evidentiary posture of the case remains unchanged, despite all contentions that prior rulings in the matter are erroneous."). Without addressing this precedent, Southern States asks us to adopt a "clearly erroneous" or "manifest injustice" exception, which Southern States asserts other jurisdictions have recognized. We decline to do so. See *Gilliam v.*

35

*State*, 312 Ga. 60, 62 (860 SE2d 543) (2021) ("Under the doctrine of stare decisis, we generally stand by our prior decisions to promote the evenhanded, predictable, and consistent development of legal principles, foster reliance on judicial decisions, and contribute to the actual and perceived integrity of the judicial process." (cleaned up)). Accordingly, we see no error in the trial court's application of the law of the case doctrine in granting CCI's motion to dismiss.

*Judgment affirmed. Ellington, LaGrua and Colvin, JJ., and Judge LaTisha Dear Jackson concur. Boggs, C. J., and Peterson, P. J., disqualified. Warren, Bethel and Pinson, JJ., not participating.*

Decided May 31, 2023 — Reconsideration denied June 22, 2023.

OCGA § 9-3-51; constitutional question. Fulton Superior Court. Before Judge Richardson.

*Arnall Golden Gregory, Jeffrey Y. Lewis, J. Tucker Barr, David L. Hobson, Natalie Cascario, Andrew C. Stevens; Bondurant Mixson & Elmore, Michael B. Terry; Edwin W. King, Jr.*, for appellants.

*Swift Currie McGhee & Hiers, Bradley S. Wolff, Michael O. Crawford; Gordon Rees Scully Mansukhani, Kimberly B. Sheridan, Cecily J. McLeod*, for appellees.