**SECOND DIVISION
RICKMAN, P. J.,
GOBEIL and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 24, 2025**

# In the Court of Appeals of Georgia

A25A1264. BOLTON v. BOLTON.

DAVIS, Judge.

This case requires us to determine whether a spouse in a same-sex marriage has parental rights over a child born in wedlock. Tiffany Bolton seeks review of the trial court's temporary order which refused to recognize the legitimacy of her parental relationship to a minor child conceived by artificial insemination during her marriage to Jennifer Bolton. Under the particular circumstances of this case, we conclude that Tiffany is entitled to parental rights over the parties' child, and so we reverse.

The record shows that the parties, both women, were lawfully married in 2018. Tiffany and Jennifer authorized and consented to the use of artificial insemination, and Jennifer underwent intrauterine insemination in 2021. As a result of the

procedure, Jennifer gave birth to a minor child, S. B., in 2021. Both parties are listed as parents on S. B.'s birth certificate. In 2024, Tiffany filed for divorce, and her petition alleged that S. B. was born "as issue" of the marriage. Jennifer answered the petition, admitted that S. B. was born in 2021 via intrauterine insemination with donor sperm, but noted that Tiffany had not sought stepparent adoption of the minor child, and she denied that the child was born "as issue" of the marriage. Jennifer counterclaimed for, among other things, full custody of S. B.

In August 2024, the parties appeared for a temporary hearing where Jennifer argued that custody was not properly before the court because Tiffany is neither a biological nor a legitimate parent of S. B. Jennifer argued that the presumption of legitimacy for children born in wedlock is inapplicable to couples in a same-sex marriage and that Tiffany does not meet the definition of "legal mother" in Georgia's Adoption Code. Tiffany responded by arguing that her constitutional Equal Protection and Due Process rights require that any laws which exclude same-sex couples from the same rights and benefits as opposite-sex couples are unconstitutional. Tiffany also argued that the relevant legitimacy statutes, OCGA §§ 19-7-20 (a) and 19-7-21, are gender neutral on their face and that her legitimacy is presumed under the statutes.

2

Tiffany further argued that Georgia's family laws are in conflict with precedent from the United States Supreme Court.

In a temporary order issued after the hearing, the trial court first declined to rule on Tiffany's constitutional challenge because it lacked detailed analysis and because she did not serve the Attorney General as required by OCGA § 9-4-7.2. The trial court then rejected Tiffany's statutory interpretation argument, finding that because OCGA § 19-7-21 was passed in 1964, the Legislature could have only contemplated the term "spouse" to refer to a man and a woman, not married persons in same-sex couples. We granted Tiffany's application for review.

Tiffany argues that the trial court's construction of OCGA § 19-7- 20 (a) and 19-7-21 to exclude her as a legitimate parent of S. B. on the basis of her gender is erroneous as a matter of statutory interpretation. We agree.[1]

As with all appeals involving the construction of statutes, this Court's review of the trial court's order is conducted de novo. *Mitchell v. State*, 343 Ga. App. 116, 117 (806 SE2d 226) (2017). This Court must

---

[1] In light of our conclusion, we do not reach Tiffany's enumeration of error concerning her constitutional claims.

presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Applying these principles, if the statutory text is 'clear and unambiguous,' we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citations and punctuation omitted.) Id. at 117-118. As a result, this Court affords the statutory text its plain and ordinary meaning and steers clear of tools of statutory construction when the text is unambiguous. See *Deal v. Coleman*, 294 Ga. 170, 172-173 (751 SE2d 337) (2013); see also OCGA § 1-3-1 ("In all interpretations of statutes, the ordinary signification shall be applied to all words. . . .").

Pursuant to OCGA § 19-7-20 (a), "[a]ll children born in wedlock or within the usual period of gestation thereafter are legitimate." This Court has interpreted this statute to mean "a child is presumed to be legitimate if the parents are married when the child is born." *Dept. of Human Resources v. Brinson*, 171 Ga. App. 905, 906 (321 SE2d 763) (1984). Under OCGA § 19-7-21,[2] "[a]ll children born within wedlock or

---

[2] We note that, during the pendency of this appeal, the Legislature amended this statute to more thoroughly address surrogacy issues, effective July 1, 2025. See OCGA

4

within the usual period of gestation thereafter who have been conceived by means of artificial insemination are irrebuttably presumed legitimate if both spouses have consented in writing to the use and administration of artificial insemination." While artificial insemination is not defined, the Supreme Court of Georgia has observed the term includes intrauterine insemination. See *Patton v. Vanderpool*, 302 Ga. 253, 255 n.5 (806 SE2d 493) (2017).

Here, Tiffany argues that the trial court ignored the plain meaning of the statutes when it interpreted them to conclude that she had no parental rights over S. B. or right to have custody. We agree. The artificial insemination statute speaks in gender neutral terms, noting that a child is to be considered legitimate when "both *spouses*" have consented in writing to the use of artificial insemination during the marriage. It is undisputed that the parties were married at the time S. B. was born. Additionally, it is undisputed that S. B. was born through artificial insemination, and the parties consented for the child to be born through that method during the marriage. Thus, under OCGA § 19-7-21, S. B. is irrebutably presumed legitimate. Additionally, we note that the legitimacy statute speaks in the broadest possible terms:

---

§ 19-7-21 (2025). These amendments do not affect the issues raised in this appeal.

5

"[*a*]ll children born within wedlock" are to be presumed legitimate. This Court has naturally interpreted this broad language to include the legitimacy of parents who are married when the child was born in wedlock. See *Brinson*, supra, 171 Ga. App. at 905. As such, under the plain and ordinary meaning of OCGA § 19-7-21, Tiffany's legitimacy is irrebuttably presumed, and she therefore has parental rights over S. B.

In concluding to the contrary, Jennifer argues that the word "spouse" in OCGA § 19-7-21 is ambiguous and thus claims the word cannot be read to include same-sex couples by virtue of the statute's enactment in 1964. She argues that we would essentially be re-writing the statutes by allowing for parental rights for same-sex married spouses and that it is the job of the Legislature to write statutes. But the plain meaning of "spouse" has not changed since the statute was enacted. Compare Webster's New Second International Dictionary (1956) (defining spouse as "a man or woman joined in wedlock; a married person, husband or wife."), with Merriam-Webster Dictionary (defining spouse as "married person; husband, wife") (visited Sept. 3, 2025). At all times, the word "spouse" has referred to a person who is married. "Rather than suggesting that the statutory language bears some other meaning, [Jennifer] merely suggest[s] that, because few in 1964 expected today's

6

result, we should not dare to admit that it follows ineluctably from the statutory text." *Bostock v. Clayton County*, 590 U. S. 644, 675-676 (III) (B) (140 SCt 1731, 207 LE2d 218) (2020). And, to be sure, "in the context of an unambiguous statutory text, whether a specific application was anticipated by [the Legislature] is irrelevant." (Citation and punctuation omitted.) Id. at 677 (II) (B).

Jennifer also looks to unrelated Code sections dealing with adoption and equitable caregivers to support her conclusion, but, again, the Supreme Court of Georgia has noted that we cannot employ canons of construction to interpret clear and unambiguous language. See *Deal*, supra, 294 Ga. at 172-173. Indeed, in that case, "judicial construction is not only unnecessary but forbidden." (Citation and punctuation omitted.) *Southern States Chem. v. Tampa Tank & Welding*, 316 Ga. 701, 713 (2) (888 SE2d 553) (2023). Because the plain and ordinary meaning of "spouse" supports Tiffany's interpretation, this Court's job is at an end.

Jennifer further argues that we cannot read OCGA §§ 19-7-20 and 19-7-21 as providing Tiffany with parental rights over S. B. because legitimation is a process that is only available for men to obtain or validate parental rights over children. While OCGA § 19-7-22 indeed clearly states that only fathers may file a petition to legitimate

7

a child, OCGA §§ 19-7-20 and 19-7-21 do not speak in terms of gender, nor do they define "legitimacy" as only describing the relationship between a father and a child. See OCGA §§ 19-7-20, 19-7-21. Black's Law Dictionary also defines "legitimacy" in gender neutral terms as "legal kinship between a child and its parent or parents." (11th ed. 2019).

Critically, under the canon of constitutional doubt, which provides that when a statute is susceptible to two meanings, one of which is constitutional and one which is not, we interpret the statute to be consistent with the Constitution. See *Foreman v. State*, 360 Ga. App. 311, 314 (861 SE2d 165) (2021). While "[i]t is the role of [the Supreme Court of Georgia], not the United States Supreme Court, … to construe the meaning of the Georgia Constitution[,]" *Elliott v. State*, 305 Ga. 179, 202 (III) (B) (iv) (824 SE2d 265) (2019), the same cannot be said about the United States Constitution. "[I]t is a fundamental principle that this Court is bound by the Constitution of the United States as its provisions are construed and applied by the Supreme Court of the United States." (Citation and punctuation omitted.) *Nordahl v. State*, 306 Ga. 15, 20 (1) (829 SE2d 99) (2019). "Thus, when the United States Supreme Court announces its interpretation of the United States Constitution, we are bound to apply that

interpretation unless and until the decision is overruled." *State of Ga. v. SisterSong Women of Color Reproductive Justice Collective*, 317 Ga. 528, 535 (2) (c) (894 SE2d 1) (2023). Consequently, when the United States Supreme Court held that same sex couples had the constitutional right to marry, all of the benefits that attached to marriage flowed in, too.

> These aspects of marital status include: taxation; inheritance and property rights; rules of intestate succession; spousal privilege in the law of evidence; hospital access; medical decisionmaking authority; adoption rights; the rights and benefits of survivors; birth and death certificates; professional ethics rules; campaign finance restrictions; workers' compensation benefits; health insurance; *and child custody, support, and visitation rules.*

(Emphasis supplied.) *Obergefell v. Hodges*, 576 U.S. 644, 670 (III) (135 SCt 2584, 192 LE2d 609) (2015).

We have been very clear on many occasions that "[t]he public policy of this state favoring the institution of marriage and the legitimacy of children born during a marriage is the strongest public policy recognized by law." (Citation omitted.) *Jefferson v. O'Neal*, 364 Ga. App. 23, 25 (873 SE2d 481) (2022). Under Georgia law and the particular facts of this case, Tiffany is S. B.'s parent, entitled to be treated the

same as any other parent when the trial court makes its child custody determination.

We therefore reverse the trial court's ruling to the contrary.

*Judgment reversed. Rickman, P. J., and Gobeil, J., concur.*